Ben Herbert PHELPER, Appellant,

v.

Bill DECKER, Sheriff of Dallas County,
Texas, Appellee.

No. 24293.

United States Court of Appeals
Fifth Circuit.

Aug. 6, 1968.

Charles W. Tessmer, Emmett Colvin, Jr., Dallas, Tex., Waldie, McDowell & Colvin, Dallas, Tex., for appellant.

Malcolm Dade, Asst. Dist. Atty., Dallas County, Tex., Lonny F. Zwiener, Asst. Atty. Gen., R. L. Lattimore, Howard M. Fender, Robert E. Owen, Asst. Attys. Gen., Austin, Tex., Crawford C. Martin, Atty. Gen. of Texas, George M. Cowden, First Asst. Atty. Gen., A. J. Carubbi, Jr., Staff Legal Asst., Henry Wade, Dist. Atty., Dallas County, Tex., for appellee.

Before BROWN, Chief Judge, BELL and THORNBERRY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This case presents an appeal from the denial by the District Court of Appellant Phelper's petition for a writ of habeas corpus.[1] Appellant was convicted in the Texas State Courts of the misdemeanor of possessing obscene photographs in violation of Article 527, Vernon's Ann.Texas Penal Code,[2] and was fined $1,000. Appellant raises a massive assault on the constitutionality of the conviction, contending that (1) of the State Trial Judge failed to follow the requirements of Jackson v. Denno in determining the voluntariness of Appellant's consent to a search of his house, (2) fruits of a search to which Appellant involuntarily consented were introduced against him at trial, (3) he was denied due process since no evidence of contemporary community standards was introduced at trial, (4) an unconstitutional instruction on the scope of contemporary community standards was given to the jury, and (5) mere possession of obscene pictures cannot constitutionally be a crime. The Federal District Court denied the petition without an evidentiary hearing.[3] Because of

1. Appellant is no stranger to the federal courts. After his conviction was affirmed by the Texas Court of Criminal Appeals, Phelper v. State, Tex.Cr.App., 1965, 396 S.W.2d 396, he sought review in the Supreme Court by writ of certiorari, which was denied. 382 U.S. 943, 86 S.Ct. 387, 15 L.Ed.2d 353. Appellant then sought relief in a petition for habeas corpus in the Federal District Court, which was denied, and that Court and this Court refused to issue a certificate of probable cause. In a per curiam opinion, the Supreme Court granted Appellant's writ of certiorari and reversed the two lower court decisions. 385 U.S. 18, 87 S.Ct. 204, 17 L.Ed.2d 17 (1966). This Court then issued the certificate on December 5, 1966.

2. The pertinent provisions of Article 527 are:
   "Art. 527. [509] Acts involving obscene articles, objects and materials; fines and penalties; exemptions
   "Section 1. Whosoever shall knowingly photograph, act in, pose for, model for, print, sell, offer for sale, give away, exhibit, televise, publish, or offer to publish, or have in his possession or under his control, or otherwise distribute, make, display, or exhibit any obscene book, mag-

azine, story, pamphlet, paper, writing, card, advertisement, circular, print, pictures, photograph, motion picture film, image, cast, slide, figure, instrument, statue, drawing, photograph record, mechanical recording, or presentation, or other article which is obscene, shall be fined not more than One Thousand Dollars ($1,000) nor imprisoned more than one (1) year in the county jail or both. * * *
   "Sec. 3. For purposes of this article the word 'obscene' is defined as whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interests. Provided, further, for the purpose of this article, the term 'contemporary community standards' shall in no case involve a territory or geographic area less than the State of Texas. * * *"

3. Appellant does not charge that it was error for the District Judge not to hold a further evidentiary hearing. See Townsend v. Sain, 1963, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770. That case requires such a hearing only "if the habeas applicant did not receive a full and fair evidentiary hearing in a state court. * * *" 372 U.S. at 312, 83 S.Ct. at 757, 9 L.Ed.2d at 785. The only fact

Appellant's failure to exhaust available state remedies as to issues (4) and (5), we reach only the first three concerning (1) the procedure used in determining the admissibility of the evidence, (2) the voluntariness of Appellant's consent to the search and the admissibility of the evidence, and (3) the failure of proof of community standards. With our scope of review thus limited, we affirm the denial of the writ on the first three issues, and vacate the denial on the remaining two issues with instructions to dismiss them without prejudice to Appellant to present those issues to the State Courts.

The facts may be quickly capsulated. In November of 1963 Appellant showed some pictures of nude women to his milkman, James Bartley. Bartley talked to Officer Smith of the Richardson, Texas, police department about the occurrence, and a meeting was arranged between Appellant and Smith at a local drugstore, even though Appellant knew Smith to be a police officer. After conversing for a time about photography, Appellant invited Smith to his home to view photographs and to discuss possible sales outlets for the pictures. Smith went to the house the next day with a fellow officer and they observed from one to two hundred colored slides of various girls, but Officer Smith considered only one of these slides obscene.

After this meeting in Appellant's home, Officer Smith reported to his superiors, and soon thereafter a Postal Inspector using a pseudonym and posing as a buyer for the pictures, began to correspond with Appellant, but the State does not contend that any obscene pictures ever passed through the mails. From November of 1963 until January of 1964, Officer Smith visited Appellant's home on several occasions and the men discussed photography and viewed more pictures, several of which Smith considered obscene.

Since things were evidently not moving fast enough, the police and the postal inspectors procured a search warrant for Appellant's home. But before the warrant could be executed, the two officers and two postal inspectors met Appellant in a Richardson drugstore (not by pre-arrangement) near the location where Appellant was conducting an art show. After talking about going for coffee, Appellant went outside and got in the car, apparently of his own volition, although he later testified that he thought himself to be under arrest. The postal inspectors then identified themselves and they all drove to the police station. Once there, the men drank coffee and reminisced about World War II experiences. Appellant was told that he was under investigation and was warned of his rights, and he then executed a written consent to the search of his house without a search warrant. He was not told, nor did he then know, of the existence of the search warrant. The police, postal inspectors, and Appellant then proceeded to Appellant's house, where, after allowing him time to talk to his wife alone to explain the situation, the officers searched the house and found the obscene pictures in controversy here.

On the State Court trial, Appellant testified on his own behalf and that the only reason he signed the consent to search was because the police said he could either consent or they would use the warrant.[4] He also swore that the consent was executed after the house was searched, not before.

issue raised on this appeal with which we deal is the issue of consent to the search, and the state court record is fully adequate on this point. Cf. Porter v. Sinclair, 5 Cir., 1967, 389 F.2d 277; Wade v. Wainwright, 5 Cir., 1967, 387 F.2d 386.

4. Appellant contends that this warrant would have been insufficient to uphold the legality of any search made under its authority because of the Supreme Court's decision in Aguilar v. State of Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, prescribing strict guidelines as to the sufficiency of information necessary to secure a warrant. The State does not contest the point, and we will, without deciding, proceed on the assumption that the search warrant was invalid.

This testimony was sharply disputed by the police. The officers testified that Appellant was warned of his right to remain silent and his right to an attorney, that he did not have to sign the consent unless he wanted to do so, that he did not know of the warrant before he signed the consent and did not find out about its existence until several hours after the search had taken place.

The State Trial Judge held a voir dire hearing outside the presence of the jury on the facts surrounding the search and seizure. Upon completion of this he then admitted all testimony about the fruits of the search before the jury over strenuous objection by Appellant's counsel. The Judge made no express finding or declaration on the record as to voluntariness or legality of the search. But his estimate of the critical importance of the evidence was shown by his charge to the jury, in which the Judge stated that if they had a reasonable doubt about the voluntariness of the consent to the search, then he was to be acquitted of the charge. The jury's verdict resolved this issue against Appellant.

█ Appellant's first contention that the voluntariness of his consent to the search was constitutionally suspect is a procedural one. Invoking Jackson v. Denno,[5] he claims that in determining voluntariness the Trial Judge failed to make and announce an independent finding on the issue before allowing the jury to receive and see the fruits of the search. But as Appellant surely realizes *Jackson-Denno* dealt only with the proper procedure to use before a confession is introduced into evidence. See Smith v. Texas, 5 Cir., 1968, 395 F.2d. 58. We know of no case nor are we cited to any,

which holds that the same circumspect procedure used in determining the voluntariness of a confession must be used before evidence claimed to have been illegally seized is submitted to the jury. Under F.R.Crim.P. 41, the Judge is only required to pass on the admissibility of the evidence before it is introduced at trial.[6] By the voir dire examination outside the hearing of the jury, that same procedure was carried out in this case. We find no constitutional infirmity in this procedure, and we see no reason to hold the States to a more exacting procedure than the Federal Courts follow.

The second attack by Appellant is a substantive one going to the reasonableness of the search and seizure and is more troublesome. Appellant contends that the fruits of the search must be excluded under the ruling in Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, because from the moment he got into the car with the postal inspectors and police outside the drugstore he was under arrest, that his arrest was illegal, and his consent to the search was the product of that illegal arrest.[7] In reply, the State contends that Appellant was not placed under arrest until after the search of Appellant's home and the seizure of the obscene photographs. Since there had been no arrest, *Wong Sun's* exclusionary rules do not apply. Alternatively, the State argues that even if Appellant was under arrest, Appellant's consent to the search was such an intervening act of free will on his part as to dissipate the taint of the illegal arrest.

Although a substantial question exists in our minds whether Appellant was indeed ever under arrest under Texas law

---

5. 1964, 378 U.S. 368, 84 S.Ct. 1774, 12 L. Ed.2d 908.

6. Fact-findings by the trial judge have been held to be unnecessary, but they are certainly helpful. See United States v. Llanes, 2 Cir., 1966, 357 F.2d 119, 120.

7. Implicit in this argument is the assumption that *Wong Sun* laid down constitutional rules and not supervisory rules for federal officers. Although the question

does not seem to have been directly passed on by a majority of a panel of this Court, the little writing that has been done all points toward the constitutional construction of *Wong Sun*. See Collins v. Beto, 5 Cir., 1965, 348 F.2d 823; Rogers v. United States, 5 Cir., 1964, 330 F.2d 535. Cf. Traub v. Connecticut, 1963, 374 U.S. 493, 83 S.Ct. 1899, 10 L.Ed.2d 1048.

until after the search of his home,[8] we need not decide either that issue or whether the arrest was legal.[9] Instead, we think the firmer and less nebulous ground is that even admitting the arrest and the illegality thereof, Appellant's consent to the search, voluntarily made— judicially determined by the jury's verdict of guilt—dissipated the taint of the arrest and made the fruits of the search admissible into evidence.

■■■ We of course recognize that consent to a search is not to be lightly inferred, but should be shown by clear and convincing evidence. Bumper v. State of North Carolina, 1968, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797; United States ex rel. Gockley v. Myers, 3 Cir., 1967, 378 F.2d 398; Thomas v. United States, 5 Cir., 1967, 377 F.2d 118; United States v. Como, 2 Cir., 1965, 340 F.2d 891. Any consent must be voluntary and uncoerced, either physically or psychologically. Cipres v. United States, 9 Cir., 1965, 343 F.2d 95; Rogers v. United States, 5 Cir., 1964, 330 F.2d 535. But a waiver of constitutional rights is possible.[10]

Our starting place in determining whether the seized pictures were admissible is Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. Until that case an illegal arrest did not render a subsequent confession or verbal statement inadmissible as illegally seized evidence, barring exceptional circumstances.[11] But in *Wong Sun* the Court held that confessions and other verbal statements could be just as much the fruit of the poisonous tree as more tangible pieces of physical evidence.

If it were determined that the consent given by Appellant was secured through an exploitation of the illegal arrest, then such consent along with the photographs secured in the search resulting from the consent would undoubtedly be fruit-of-

8. Cf. Alexander v. United States, 5 Cir., 1968, 390 F.2d 101; Myricks v. United States, 5 Cir., 1967, 370 F.2d 901, 903, n. 1, cert. dism'd, 1967, 386 U.S. 1015, 87 S.Ct. 1366, 18 L.Ed.2d 474. Article 15.-22, Vernon's Ann.Tex.Code Crim.P. (1965), provides that "a person is arrested when he has been actually placed under the restraint or taken into custody by an officer * * *." Under the facts we have reviewed a close issue is presented as to the exact time Phelper was under arrest.

9. The State never contests Appellant's assertion that assuming an arrest was made at the drugstore, it was an illegal arrest. Article 14.01 of the Texas Code of Criminal Procedure, as it read in 1964, required an arrest warrant for the arrest of a person suspected of having committed a misdemeanor not in the presence of an officer. No one disputes the fact that the officers had no arrest warrant, and "state law determines the lawfulness of arrests by state officers, of course subject to constitutional standards." Amador-Gonzalez v. United States, 5 Cir., 1968, 391 F.2d 308, 313; see Peters v. Rutledge, 5 Cir., 1968, 397 F.2d 731.
   We likewise decline to express an opinion on the question of whether Appellant could have been arrested without a war-

rant in January for showing the obscene pictures to Officer Smith in November. A brief check shows Texas law apparently to be that the officer must make the arrest immediately after the offense for misdemeanor crimes. Cf. Rodriguez v. State, 1943, 146 Tex.Cr.R. 206, 172 S.W.2d 502.

10. Cf. Miranda v. State of Arizona, 1966, 384 U.S. 436, 475–476, 86 S.Ct. 1602, 1628–1629, 16 L.Ed.2d 694, 724–725. It should also be noted that Appellant's trial took place before the decision in *Miranda,* and the inflexible rules laid down there are in no way applicable to this case. Johnson v. State of New Jersey, 1966, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882. The lack of intensive interrogation and the warning of constitutional rights distinguishes our present situation from Escobedo v. State of Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.

11. Some cases so held prior to *Wong Sun* if the "arrest and detention were part of a framework of coercion, physical or psychological." Rogers v. United States, 5 Cir., 1964, 330 F.2d 535, 540. See Smith v. United States, 103 U.S.App.D.C. 48, 254 F.2d 751, 758, cert. denied, 1958, 357 U.S. 937, 78 S.Ct. 1388, 2 L.Ed.2d 1552; United States v. Walker, 2 Cir., 176 F.2d 564, cert. denied, 1949, 338 U.S. 891, 70 S.Ct. 239, 94 L.Ed. 547.

the-tree.[12] But not every piece of evidence uncovered after an illegal arrest is automatically excluded.[13] Rather, the question to be asked each time is: " '[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959)." Wong Sun v. United States, 371 U.S. at 488, 83 S.Ct. at 417, 9 L.Ed. 2d at 455. In the *Wong Sun* opinion itself, the Court considered two situations where incriminating statements were given by a suspect. The first statement, obtained from James Wah Toy, was made immediately after six or seven officers had illegally broken into Toy's Laundry and chased him to the back room. Under those circumstances, the Court held that "it is unreasonable to infer that Toy's response [to questions by the officers] was sufficiently an act of free will to purge the primary taint of the unlawful invasion." 371 U.S. at 486, 83 S.Ct. at 417, 9 L.Ed.2d at 454. At the other pole, the Court also considered the confession of Wong Sun. He had been released on his own recognizance after arraignment, but returned several days later to make a statement. The Court held that under these facts the statement was admissible for "the connection between the arrest and the statement had 'become so attenuated as to dissipate the taint.

Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307, 312.' " Wong Sun v. United States, 371 U.S. at 491, 83 S.Ct. at 419, 9 L.Ed.2d at 457. Although the Supreme Court dealt with two extreme factual situations in *Wong Sun*, this hardly means that lower courts have to muddle around in finding the middle ground and the proper rule to apply in cases that fit neither end of the dissipated-undissipated "taint" spectrum, as several guidelines have naturally emerged in decisions construing *Wong Sun* which help us in determining when the taint is dissipated.[14] One consideration is the proximity of the illegal arrest to the procurement of the confession or other evidence.[15] While time is one consideration, that alone is not sufficient. As pointed out in Collins v. Beto,[16] police could then keep a suspect "on ice" for a few days and then use everything he says.[17] A second consideration would be other intervening occurrences between the illegal arrest and the acquisition of the evidence sought to be used.[18] For example, the intervening guidance of an attorney would be one factor helpful in dissipating the taint, as would warnings of constitutional rights. But third, and most important, the courts should follow the Supreme Court's own suggestion and consider the circumstances under which the arrest was made.[19] Inextricably bound up in this consideration would be whether the arrest was illegal as a matter of failure to comply with technical re-

12. See Alexander v. United States, 5 Cir., 1968, 390 F.2d 101, where this analysis was accepted *sub silentio*.

13. See Armwood v. Pepersack, D.Md.1965, 244 F.Supp. 469, aff'd per curiam, Armwood v. Brough, 4 Cir., 1966, 359 F.2d 854. Even in federal cases, this Circuit has not accepted the idea that the Supreme Court laid down a new per se supervisory rule to be used in illegal arrest cases. See Rogers v. United States, 5 Cir., 1964, 330 F.2d 535, 541; cf. Wong Sun v. United States, supra, 371 U.S. at 486 n. 12, 83 S.Ct. at 417, 9 L.Ed.2d at 454 n. 12.

14. See, e.g., Manuel v. United States, 5 Cir., 1966, 355 F.2d 344; United States v. Close, 4 Cir., 1965, 349 F.2d 841;

United States v. McGavic, 6 Cir., 1964, 337 F.2d 317; Burke v. United States, 1 Cir., 1964, 328 F.2d 399.

15. See Rogers v. United States, supra, 330 F.2d at 541: "At first blush [*Wong Sun*] would appear to require only a passing of sufficient time between the arrest and the statement for the defendant to clear and arrange his mind."

16. 5 Cir., 1965, 348 F.2d 823.

17. Id. at 828.

18. Commonwealth of Pennsylvania ex rel. Craig v. Maroney, 3 Cir., 1965, 348 F.2d 22, 29.

19. Wong Sun v. United States, supra, 371 U.S. at 486, 83 S.Ct. at 416, 9 L.Ed.2d at 454.

quirements or whether the arrest and subsequent search and seizure amounted to a gross violation of legal processes.[20]

■ In considering the facts surrounding Appellant's arrest and his consent to the search of his house, we find these outstanding factors. First, Appellant does not dispute that he voluntarily accompanied the officers to the police station to drink coffee, as he had done in the past. Second, this arrest, if it was an arrest, was illegal only because of a technicality of Texas law which has since been repealed,[21] not for violation of constitutional rights, such as lack of probable cause. Third, Phelper was advised of his constitutional rights including his right to an attorney. Fourth, Phelper was not subjected to any prolonged questioning nor coercion of any kind. Taking all these factors into consideration, along with the State Trial Judge's and jury's finding that Phelper's consent was voluntary and the product of his own free will, we hold that his constitutional rights under the Fourth Amendment were not violated.[22]

■■ Appellant's third contention is that he was denied due process of law because there was no evidence offered as to what constituted contemporary community standards. Since in an obscenity case the material must offend contemporary community standards,[23] a failure of proof on that element of the offense, Appellant urges, constitutes a denial of due process. See Thompson v. City of Louisville, 1960, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654, where the Supreme Court held that it was a violation of due process to convict a man where there was no evidence in the record to show any crime was committed. But neither that case nor Garner v. State of Louisiana, 1961, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207, supports the proposition that the failure to prove every element of an offense elevates such an error to one of constitutional proportions. In both *Thompson* and *Garner*, the prosecution simply introduced no evidence to establish any elements of any offense. See Garner v. State of Louisiana, supra, 368 U.S. at 189, 82 S.Ct. at 265, 7 L.Ed.2d at 229 (Harlan, J., concurring). To hold

20. See Ralph v. Pepersack, 4 Cir., 1964, 335 F.2d 128, 136, where that Court said that "there is significant distinction between police action which is unlawful because violative of constitutional provisions and police action which merely fails to accord with statute, rule or some other nonconstitutional mandate." We have pointed this out most recently in Luna v. Beto, 5 Cir., 1968, 395 F.2d 35 (concurring opinion) (en banc).

21. Prior to 1967, peace officers in Texas could arrest a person without a warrant for a misdemeanor only if it was classified as being against the public peace. Tex.Code Crim.Proc.Ann. art. 14.01 (1966). See note 9 supra. Now a peace officer "may arrest an offender without a warrant for *any offense* committed in his presence or within his view." Tex. Code Crim.Proc.Ann. art. 14.01 (Supp. 1967) (Emphasis added).

22. We see no conflict between our decision here and Collins v. Beto, 5 Cir., 1965, 348 F.2d 823. First it should be noted that Judge Friendly concurred only in the result (that the confession was inadmissible) on the ground that it was in-

voluntary under traditional principles. There was thus no concurrence in Judge Tuttle's determination that the confession was inadmissible under both *Wong Sun* and *Escobedo*. Judge Hutcheson dissented. Furthermore, in *Collins* the defendant was held incommunicado for thirty-six hours on the slightest of suspicions. His confession was finally obtained after lengthy questioning and without being warned of his constitutional rights. Thus there was a complete lack of any intervening circumstances to dissipate the taint of the illegal arrest. Also distinguishable is Alexander v. United States, supra, where the suspect was misled as to the purpose of his arrest and was then taken into custody by postal inspectors who have no authority to arrest other than as ordinary citizens. No evidence in that case presents any basis on which to conclude that a valid waiver was made.

23. See A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Com. of Massachusetts, 1966, 383 U.S. 413, 418, 86 S.Ct. 975, 16 L.Ed.2d 1, 6.

otherwise, as Appellant says we must, would turn the federal courts into an automatic super-court sitting in appellate review of the sufficiency of the evidence in all state court judgments. A determination that on the basis of State or Federal standards an instructed verdict should have been granted by the state trial court would assure release by habeas. The federal courts would then be just an added agency of appellate review and would then be open to the criticism, now unfounded, that a single Federal Judge can overrule a State Supreme Court. It is only the exceptional and unusual case that lends itself to the *Thompson* result,[24] and more than a mere mistake is necessary to elevate that mistake to constitutional proportions. Luna v. Beto, 5 Cir., 1968, 395 F.2d 35, 40 (concurring opinion) (en banc); cf. Atlanta Bowling Center, Inc. v. Allen, 5 Cir., 1968, 389 F.2d 713. Thus even assuming that there was a total failure of proof on contemporary community standards so that the Texas Courts erred[25] in not reversing his conviction, the conviction, though erroneous, was not the result of a denial of due process. Cf. Doughty v. Beto, 5 Cir., 1968, 396 F.2d 128.

■ Because Appellant's remaining contentions, that an unconstitutional instruction on community standards was given to the jury and that mere possession of obscenity cannot constitutionally be a crime, have never been presented to the State Courts,[26] we do not reach the merits of these contentions. Texas' Article 11.07 now provides a very effective remedy that we have exploited many times in the past.[27] Thus in the interest of comity and respect for state-federal relations and fixing initial responsibility where it rightfully belongs, Texas Courts should have the first opportunity to pass upon these very serious contentions.

A brief consideration of them demonstrates why they are serious and warrant direct, serious consideration by the Texas Court. Cf. Peters v. Rutledge, 5 Cir., 1968, 397 F.2d 731.

Appellant's contention (4) is that the jury was given an unconstitutional instruction as to the proper scope of contemporary community standards to be applied. The Texas statute in question[28] provides that contemporary community standards shall not involve a territory less than the geographic area of the State of Texas. Again, neither the Court of Criminal Appeals of Texas nor the Supreme Court of the United States has ever had to pass squarely on the question of what is the scope of the community standard to be applied by the jury. In Jacobellis v. State of Ohio,

24. See Edmondson v. Warden, 4 Cir., 1964, 335 F.2d 608, 609; Buchanan v. McGee, 9 Cir., 1961, 290 F.2d 711; Grundler v. State of North Carolina, 4 Cir., 1960, 283 F.2d 798.

25. We intimated in Kahn v. United States, 5 Cir.; 1962, 300 F.2d 78, cert. denied, 369 U.S. 859, 82 S.Ct. 949, 8 L.Ed.2d 18, that such evidence was not prerequisite to conviction in a federal trial.

26. Although urged at oral argument by Appellant's counsel to find that all contentions had been presented to the Texas Courts, we called for, received and examined the Appellant's petition for a writ of certiorari to the Supreme Court and his briefs in the Texas Court of Criminal Appeals, and we are satisfied that contentions (4) and (5) were presented to neither the State Courts nor the Supreme Court for determination.

27. The landmark case was Texas v. Payton, 5 Cir., 1968, 390 F.2d 261. Since then we have followed the reasoning of that decision in the following Texas cases: Stepp v. Beto, 5 Cir., 1968, 398 F.2d 814; Van Skike v. Beto, 5 Cir., 1968, 398 F.2d 407; Bruce v. Beto, 5 Cir., 1968, 396 F.2d 212; Woodbury v. Beto, 5 Cir., 1968, 395 F.2d 189; Beto v. Conley, 5 Cir., 1968, 393 F.2d 497; Taylor v. Beto, 5 Cir., 1968, 392 F.2d 566; Waters v. Beto, 5 Cir., 1968, 387 F.2d 335; Sheehan v. Beto, 5 Cir., 1968, 387 F.2d 263. We have followed the same procedure in other Fifth Circuit States where post-conviction remedies are available. See, for Georgia, Peters v. Rutledge, 5 Cir., 1968, 397 F.2d 731; accord, Moore v. Dutton, 5 Cir., 1968, 396 F.2d 782; for Florida, Milton v. Wainwright, 5 Cir., 1968, 396 F.2d 214.

28. See note 2 supra.

1964, 378 U.S. 184, 84 S.Ct. 1676, 12 L. Ed.2d 793, Justice Brennan expressed the view that the community standard had to be that of the national community. 378 U.S. at 195, 84 S.Ct. at 1682, 12 L.Ed. 2d at 802. Only Justice Goldberg concurred in this part of the opinion. The Chief Justice and Justice Clark expressed the opinion that the community standard was that of the local community. 378 U.S. at 199, 84 S.Ct. at 1684, 12 L.Ed. 2d at 804. See Comment, Separate Obscenity Standard for Youth: Potential Court Escape Route From Its "Supercensor" Role, 1 Ga.L.Rev. 707, 722 (1967).

Appellant's contention (5) as delineated above is that mere possession of obscene materials does not constitutionally constitute a crime. Although the Supreme Court has never squarely passed on this issue, apparently at least three Justices are of the view that private obscenity is not a public concern. See Redmond v. United States, 1966, 384 U.S. 264, 86 S.Ct. 1415, 16 L.Ed.2d 521 (Stewart, Black, and Douglas, JJ., concurring in the result). See also Mapp v. Ohio, 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081 (memorandum of Stewart, J.).

Necessarily consideration of these issues by the Texas Courts will inescapably require them to pass upon the constitutionality of Article 527 on its face in light of A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Com. of Massachusetts, 1966, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1. In that case the court said that for material to be obscence "it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." 383 U.S. at 418, 86 S.Ct. at 977, 16 L.Ed.2d at 6. Since the Texas Statute is devoid of any language that requires a finding that the material must have no redeeming social value, it may be constitutionally suspect.[29]

These are serious questions which under our Federalism Texas should, and wants to, consider first. This is especially true where, as here, there may be need for further factual determination for which the new Article 11.07, Tex.Code Crim.P., is so well suited. To allow Appellant to take advantage of this procedure, we vacate the denial of the writ on issues (4) and (5). We think this the preferred course rather than affirm without prejudice as we have sometimes done since no possible implication can arise from the District Judge's failure to accord relief below. See Stepp v. Beto, 5 Cir., 1968, 398 F.2d 814. These issues are remanded to the District Court with directions to dismiss the petition without prejudice as to them. On the issue which we have met and decided, the District Court is affirmed.

Affirmed in part: vacated and remanded in part.

29. See also Fort v. City of Miami, 1967, 389 U.S. 918, 88 S.Ct. 231, 19 L.Ed.2d 263. In dissenting from the denial of a petition of certiorari, Justices Stewart, Black, and Douglas expressed the view that the statute under which the petitioner in that case had been convicted was unconstitutional on its face. The wording of the test of obscenity embodied in the Florida Statute in question was almost identical to Article 527 of the Texas Penal Code, apparently reflecting the reliance of State Legislatures on the Supreme Court's opinion in Roth v. United States, 1957, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, and the test for obscenity set forth in that opinion.