**Dominick Angel BRETTI, Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT, Director, Division of Corrections, State of Florida, Respondent-Appellee.**

**No. 29811**

**Summary Calendar.**\*

United States Court of Appeals,
Fifth Circuit.

Feb. 24, 1971.

Rehearing Denied May 4, 1971.

\* Rule 18, 5th Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of

New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

Dominick A. Bretti, pro se.

Earl Faircloth, Atty. Gen., Tallahassee, Fla., Arden Siegendorf, Melvin B. Grossman, Asst. Attys. Gen., Miami, Fla., for respondent-appellee.

Before GEWIN, GOLDBERG, and DYER, Circuit Judges.

GOLDBERG, Circuit Judge:

This appeal is taken from an order of the district court denying the petition of a Florida state convict for the writ of habeas corpus. Appellant, tried with two co-defendants, was convicted by a jury of robbery and was sentenced to fifteen years imprisonment. Conviction was affirmed in Bretti v. State, Fla. App.1966, 192 So.2d 6, cert. denied, Fla. 1967, 201 So.2d 459, cert. denied, 1967, 390 U.S. 944, 88 S.Ct. 1023, 19 L.Ed.2d 1132.

In his habeas petition filed below appellant presented the following allegations which he had argued on direct appeal to the state court; that the trial court wrongfully admitted evidence obtained by an illegal search and seizure, and that the trial court erred in denying his motion for severance. The district court denied relief without holding an evidentiary hearing, finding that the hearing held by the state trial court on appellant's motion to suppress was complete and fair, that the state court's findings were correct, and that the trial judge did not abuse his discretion in denying a severance. We affirm.

Appellant first argues that the state trial court committed constitutional error by admitting into evidence the fruits of an illegal search. In Miami Shores, Florida, on February 9, 1965, at about 9:00 P.M., a Dr. Traub and Mrs. Fritzel, his house guest, were robbed at gunpoint of their jewelry and furs. Police officers, who were en route to the Traub residence in answer to a disturbance call, noticed a Falcon automobile with two passengers in the area. After ascertaining that a robbery had taken place, a search for the Falcon automobile commenced. The car was subsequently discovered to be in the parking lot of the Apache Motel.

Later that same evening the police learned from an informant that three men had been seen getting out of a Cadillac automobile in the same parking lot and leaving in a car resembling a Falcon. Sometime later, according to the informant, the Falcon returned, and three men removed some bundles from its trunk and placed them in the trunk of the Cadillac. The men then departed from the lot in the Cadillac.

After checking the license number supplied by the informant, the police ascertained that the Cadillac was registered to Anthony Antone. Although they had neither an arrest warrant nor a search warrant, the police went to arrest Antone at his apartment at approximately 5:30 or 6:00 A.M., on the morning of February 10. When no one responded to the officers' knocks, they opened Antone's closed but unlocked door and entered his apartment. A search revealed that no one was inside. The police thereupon secreted themselves in the apartment and remained therein until approximately 11:00 A.M., when Antone, Louis Ghelfi, and appellant Bretti entered the premises. The three men were immediately placed under arrest.

Following the arrests one of the police officers took Ghelfi outside, and, according to that officer's testimony, Ghelfi consented to a search of his car, also a Cadillac automobile. Under the driver's seat the officer discovered a brown paper bag containing jewelry. Officers then escorted Ghelfi to his home where again they testified that he consented to a search of the premises. There the officers found two pistols.

Meanwhile Antone was taken to his car where, the officers testified, he consented to a search. In the trunk the police found a pillow case containing furs. The automobile was again searched the next day without a warrant or additional consent, and several guns were discovered.

Similarly, police officers Bishop and Ford, who arrived at Antone's apartment subsequent to the arrests, took appellant Bretti to his car. These officers testified that appellant consented to a search of the car, but that no evidence was discovered. The officers then took appellant to his home. Once again they

testified that they sought appellant's consent to search for furs and jewels. According to their testimony, the officers warned appellant that he had a right to counsel and anything they discovered could be used against him. Appellant allegedly responded that he had nothing to hide and opened the apartment door with his own keys. While the police found no furs or jewels, they did discover in plain view on top of a small refrigerator a driver's license in the name of Joseph Annello. In response to questions as to who owned the license, how it got there, and why it was there, the appellant disclaimed all knowledge of the license.

Upon investigation it was determined that the license was used as identification to rent a Falcon automobile, and the clerk at the rental agency identified appellant as the man who rented the car on the afternoon of February 9, 1965.

Appellant argues that the introduction of the driver's license into evidence was error. He contends (1) that he did not consent to a search of his apartment; (2) that if he did consent, the consent was vitiated because it was predicated upon an illegal arrest; and (3) that even if the consent was not invalid, it did not extend to a general exploratory search for articles other than furs and jewels.

■ After a full and fair hearing on appellant's motion to suppress, the state trial court found that appellant freely and voluntarily consented to a search of his apartment, and this ruling was affirmed on appeal. We find the conclusions of the state courts fairly supported by the record and hold that the district court below was not clearly erroneous in adopting those determinations as its own. 28 U.S.C.A. § 2254; Townsend v. Sain, 1963, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770; *see* Tyler v. Beto, 5 Cir. 1968, 391 F.2d 993; Landsdown v. United States, 5 Cir. 1965, 348 F.2d 405.

■ In reaching this conclusion we of course bear in mind that "consent to a search is not lightly inferred, but must be shown by clear and convincing evidence * * * Any consent must be voluntary and uncoerced, either physically or psychologically." Phelper v. Decker, 5 Cir. 1968, 401 F.2d 232, 236. We should be at least as alert where it is contended that a consent is the product of an illegal arrest. *Cf.* Wong Sun v. United States, 1963, 371 U.S. 471, 83 S. Ct. 407, 9 L.Ed.2d 441. Nevertheless, a waiver of constitutional rights is possible following an illegal arrest. The appropriate test was stated in *Phelper*:

"If it were determined that the consent given by Appellant was secured through an exploitation of the illegal arrest, then such consent along with the photographs secured in the search resulting from the consent would undoubtedly be fruit-of-the-tree. But not every piece of evidence uncovered after an illegal arrest is automatically excluded. Rather, the question to be asked each time is ' "[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Maguire, Evidence of Guilt, 221 (1959).' Wong Sun v. United States, 371 U.S. at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 455. * * *" 401 F.2d at 236–237 (footnotes omitted).

We need not here decide whether the arrest of appellant was legal or not,[1] for, even if illegal, we think that the subsequent consent was untainted under the reasoning of *Phelper*. First, there is no evidence that appellant was subjected to any coercive tactics in order to elicit his consent. The duress, if any, did not go beyond that inherent in any arrest. Second, and perhaps most important, there were significant "intervening occurrences" between the alleged illegal

1. The question of the legality of appellant's arrest under Florida law is not free from doubt. See Benefield v. State, Fla.1964, 160 So.2d 706.

arrest and the acquisition of the evidence sought to be used. Phelper v. Decker, *supra*, 401 F.2d at 237. Thus, the evidence would support a conclusion that appellant was advised that he need not consent, that anything found could be used against him, and that he had a right to consult with an attorney. While warnings prior to a consensual search may not have the same indispensability as those required prior to a confession, *see* Agius v. United States, 5 Cir. 1969, 413 F.2d 915; Byrd v. Lane, 7 Cir. 1968, 398 F.2d 750; Gorman v. United States, 1 Cir. 1967, 380 F.2d 158; *cf.* Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, they do help ensure that the consent is free, voluntary, and untainted by the arrest's possible illegality. In the instant case the presence of these warnings leads us to conclude that any coercion flowing from the possible illegality of appellant's arrest was dissipated. We therefore hold that the evidence supports the conclusion that appellant voluntarily consented to the search of his apartment.

██ Nor do we think that, as appellant contends, the seizure of the driver's license went beyond the scope of that consent. While the request for appellant's consent was phrased in terms of a search for furs and jewels, that request cannot reasonably be construed as disabling the police from seizing evidence which there is reason to believe would aid in appellant's conviction for robbery. *See* Warden, Maryland Penitentiary v. Hayden, 1967, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782. This was not a general exploratory search for articles without relation to the crime for which appellant was arrested. The unexplained presence in appellant's apartment of a driver's license bearing Annello's name would reasonably arouse suspicion that it was utilized in the robbery. Since there is a nexus between the crime for which the evidence was sought and

the driver's license that was seized, we cannot hold that appellant's consent was abused.

██ Moreover, the driver's license was in "plain view." As we have frequently noted, "[i]t has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. * * * Evidence concerning '[t]hat which is in plain view *is not the product of a search*'" Marshall v. United States, 5 Cir. 1970, 422 F.2d 185, 188; *see* Harris v. United States, 1968, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067; United States v. Lee, 4 Cir. 1962, 308 F.2d 715. The police officers here were on the premises pursuant to appellant's consent, and the driver's license, being in plain view, was subject to seizure. For all these reasons we conclude that the state court did not err in admitting the driver's license into evidence.

██ Appellant next argues that he was denied a fair trial because of the failure of the state trial court to grant his motion for severance. Appellant contends that he was prejudiced from the court's failure to sever because he was unable to examine his co-defendants who chose not to testify at their joint trial. Evidence seized from Antone and Ghelfi was introduced against all three co-defendants.[2] Thus, appellant claims, he should have been afforded an opportunity to question both co-defendants as to the validity of their consents to the searches which led to the seizure of the incriminating evidence.

We begin with the proposition that the denial of severance in a joint trial of co-defendants "is a matter within the sound discretion of the trial Judge, and his decision will not be overturned unless there is an affirmative showing of abuse of discretion." Milam v. United States, 5 Cir. 1963, 322 F.2d 104; *accord*, Blachly v. United States, 5 Cir. 1967, 380 F.2d 665, 674–675; Peterson v.

2. The evidence which was seized from Antone and Ghelfi and introduced at the joint trial consisted of jewelry, furs, and guns.

United States, 5 Cir. 1965, 344 F.2d 419. No showing has been made that this discretion has here been abused.

 The record reveals that in fact appellant was able to examine his co-defendants with reference to their alleged consents. The state trial court held a hearing on appellant's motion to suppress. At that hearing all of the co-defendants testified, and appellant's counsel, who also represented the two co-defendants, questioned them fully as to their consent to the searches and the validity thereof. Appellant argues, however, that the jury was unable to hear this evidence. But this contention ignores the well-established rule that it is for the court, not the jury, to decide whether evidence has been illegally obtained. Phelper v. Decker, *supra*, 401 F.2d at 235; Burris v. United States, 5 Cir. 1951, 192 F.2d 253; C. Wright, Federal Practice & Procedure § 675, at 124 (1969). Since all relevant testimony was adduced at the hearing on the motion to suppress, we agree with the district court's conclusion below that it is difficult "to see how, in fact, Petitioner was prejudiced."

Alternatively, even if appellant had not been able to inquire into the validity of his co-defendants' consents, he could not be heard to complain, for he lacked standing to object to the introduction of the evidence seized from Antone and Ghelfi. Alderman v. United States, 1969, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176; Jones v. United States, 1960, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697; Sendejas v. United States, 9 Cir. 1970, 428 F.2d 1040, 1043–1044 (Tuttle, J.); Matthews v. United States, 5 Cir. 1969, 407 F.2d 1371, 1383. Since the searches in question were not directed at appellant or his premises, only his co-defendants could contest the validity of their consents. Since it would have been impermissible in this case for appellant to have been afforded the benefits of the exclusionary rule, he may not now complain of any inability to examine Antone and Ghelfi with regard to their consents. We therefore conclude that the state trial court did not err in denying appellant's motion for severance.

The district court's denial of the petition for writ of habeas corpus is affirmed.