UNITED STATES of America, Plaintiff,

v.

Joseph P. BLANCHARD, Defendant.

No. 79–406–CR–EBD.

United States District Court,
S. D. Florida.

July 24, 1980.

located at 16805 N.W. 12th Avenue, Miami, Florida. It led to the seizure of twenty–six counterfeit Federal Reserve Notes in $20.00 denominations, amounting to $520.00, as well as one firearm. The suppression hearing was requested pursuant to 28 U.S.C. § 636(b)(1). The gravamen of the Defendant's argument was the lack of a sufficiently independent, intervening act to purge the primary taint of the initial warrantless invasion by two Secret Service Agents. The Defendant contended that, despite the Magistrate's finding to the contrary, his act of "reaching for a gun" never occurred because neither Agent testified to any such act. He further claimed that he would have gone for the gun only *if* he didn't know who the intruders were.

To consider the Defendant's challenge, this Court accepts as given the factual findings of the evidentiary hearing conducted by the Magistrate. The critical issue is whether the Defendant's act of reaching for a gun legally amounted to an independent, intervening act. Inquiry must first begin with an examination of the sequence of events which occurred prior to and during the search of the motel room occupied by Mr. Blanchard on October 30, 1979. The relevant facts submitted to the Magistrate, upon which the findings of involuntary consent to the search and lack of probable cause were made, are as follows:

1) Mr. Blanchard occupied the motel room with the consent of the legally registered occupant, Linda Babok. Babok's account was delinquent in the amount of $13.30 as of noon on October 30th. This amount represents telephone charges for the previous day. The $13.30 was not debited to the account until some time *after* noon on October 30th. If Babok and Blanchard had checked out of the motel at noon, they would have received a refund of $11.61.

2) Babok had clearly notified the Inn of her intention to hold the room until noon on October 31st and had used the Defendant's money to pay the room rent until that time. She had also paid all outstanding room charges posted on her bill as of midnight,

David K. Kelley, Asst. U. S. Atty., for plaintiff.

Michael G. Smith, Miami, Fla., for defendant.

EDWARD B. DAVIS, District Judge.

On July 9–10, 1980, a suppression hearing was held after a motion for such a hearing on behalf of the Defendant, Joseph P. Blanchard, was granted. At that hearing, the defense challenged the validity of a search and seizure conducted in a motel room occupied by the Defendant. The search, executed on October 30, 1979 in the late afternoon, occurred at the Ramada Inn

October 29. Neither Babok nor Blanchard were ever notified that they could be evicted if they did not pay all outstanding charges on the room, other than rent, in advance.

3) On the morning of October 30th, the motel's day desk clerk informed the motel manager that Babok had attempted to pay her bill with counterfeit currency the previous night. The motel manager decided that Babok would not be allowed to stay another night.

4) Repeated telephone calls to the room from the desk were not answered; a maid received no answer to repeated knocking on the room door.

5) After 12:00 noon, motel personnel attempted entry with a pass key, but were unable to do so because the room was bolted from inside.

6) The motel manager telephoned the local police for assistance. She was told that the matter had been turned over to federal authorities because of the possible counterfeiting incident the previous night.

7) At 4:00 p. m. on October 30, 1979, two Secret Service Special Agents arrived at the motel. The motel manager related the facts known to her concerning the attempted passing of alleged counterfeit currency and asked for their assistance in obtaining entrance to the room.

8) At approximately 5:00 p. m. on October 30th, the two agents, motel manager, and a maintenance employee went to the room. A pass key was again tried, but the agents could not gain entry. One of the agents knocked on the door repeatedly, identifying himself as the Management.

9) At the same time, the motel manager telephoned Blanchard's room, letting the phone ring continuously for about a minute. A male voice responded to the knocking, stating that he would have to get dressed.

10) After further knocking, the Defendant opened the door. The Agents entered the room with guns drawn and identification visible. The manager asked the Defendant to leave stating that the bill had not been paid.

11) The Agents then informed Blanchard that they had received the motel's permission to search all portions of the room belonging to the motel. Blanchard was also informed that if he refused to consent to a search, a warrant would be obtained, and he would be detained until the warrant was issued. Blanchard hesitated at first, but then gave permission to search, saying he had nothing to hide.

12) One Agent began lifting up the ends of the mattresses on the two double beds in the room. Blanchard then walked to a corner of the bed which had been slept in and lifted a corner. The Agent, having seen an object under the mattress lifted by Blanchard, asked what it was, and Blanchard said, "a gun."

13) The other agent shoved Blanchard aside and retrieved a gun which was concealed inside a case and not openly visible. In addition, an open envelope containing counterfeit currency and a man's wallet were found under the mattress.

14) At no time during the search did Blanchard touch the gun case or the gun.

15) Blanchard was placed under arrest immediately. He was warned of his *Miranda* rights for the first time. He subsequently made incriminating statements and cooperated extensively with the agents that evening and throughout the following week.

■ The Court adopts the Magistrate's finding relating to the standing issue raised by the government. Blanchard has standing to contest the search of the motel room. His claim of a possessory interest in the goods seized is sufficient to confer standing. *Simmons v. United States*, 390 U.S. 377, 390, 88 S.Ct. 967, 974, 19 L.Ed.2d 1247 (1968); *United States v. Jeffers*, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951). Blanchard, as a paying guest in the motel room with the permission of the registered occupant, clearly had a legitimate expectation of privacy in the premises searched which constitutes a sufficient basis to establish standing. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

98

■ After the evidentiary hearing, the Magistrate found that no legal consent was given for the Agents' search of Blanchard's room, either by the motel manager or Blanchard himself. The Court adopts this finding as well. A guest in a hotel or motel room is entitled to protection against unreasonable searches and seizures, and the proprietor of the establishment has no authority to consent to a search of a room rented to a guest. *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). The consent obtained from Blanchard was not freely and voluntarily given, due to the prevailing oppressive circumstances and to the Agents' statement that detainment would result if Blanchard refused consent. When the government seeks to justify a warrantless search on the basis of consent, it must demonstrate from proof of the surrounding circumstances that the consent was in fact voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

■ Similarly, the Court adopts the Magistrate's finding that no probable cause existed for the warrantless search of the motel room in which the defendant was staying. The events prior to the search do not sufficiently establish probable cause, and the Government has shown no exigent circumstances to excuse the warrantless search.

The Court, however, chooses not to adopt the finding of the Magistrate which labeled Blanchard's act of reaching for the gun case an intervening act of free will sufficient to purge the primary taint of the unlawful invasion. Taints have been purged in a variety of situations, but none are similar to the instant case; e.g., when the defendant is released from custody and returns to the police station several days later to make a statement, *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 471 (1963); when illegality directs the police's focus to a specific suspect, but a full-scale investigation, subsequently made, leads to arrest, *Gissendanner v. Wainwright*, 482 F.2d 1293 (5th Cir. 1973); when illegality results in evidence of another, different crime, *United States v. Bacall*, 443 F.2d 1050 (9th Cir. 1971).

Fifth Circuit cases dealing with this issue clearly define an independent, intervening act as one which is voluntary and uncoerced, physically and psychologically. *Phelper v. Decker*, 401 F.2d 232 (5th Cir. 1968). Having found that Blanchard did not freely and voluntarily consent to the initial coercive search, it follows that Blanchard, only minutes later, reached for his gun case in an atmosphere of physical and psychological coercion.

■ The *Phelper* Court set out three guidelines to be used in determining when a taint is dissipated, 401 F.2d at 237–238. The first guideline is the time proximity of the illegal arrest or search to the procurement of the evidence: The closer the proximity, the lesser the likelihood is for the taint to be dissipated. In the instant case, the proximity of the illegal invasion to the found evidence is a matter of minutes.

The second guideline is the existence of other intervening occurrences between the illegal invasion and the acquisition of evidence. The *Phelper* Court specifically identified two examples of an intervening occurrence; attorney's advice or warnings of constitutional rights. The act claimed to be independent in the instant case is not similar to either example. The act was induced by a prevailing mood of coercion set by the agents and cannot fit under the category of an intervening occurrence.

The third guideline is the circumstances under which the arrest or search was made. If the alleged illegality resulted from a failure to comply with a technical requirement, it can be excused. If the illegality resulted from a gross violation of Constitutional rights, it cannot be excused. Mr. Blanchard claims violation of his Fourth Amendment right to be free from unreasonable searches and seizures, and this Court agrees. The Magistrate's finding that no probable cause existed for the warrantless search corroborates the finding of a gross legal violation. Following these three guidelines in light of the factual circumstances surrounding the search, it becomes

obvious that the initial taint was not dissipated by time, an intervening occurrence or a mere technical violation of the law.

 The causal connection between the illegal search and the items recovered was not broken sufficiently to purge the primary taint of the initial invasion. Similarly, the giving of Miranda warnings following a formal arrest does not suffice to cure a Fourth Amendment violation when inculpatory statements are subsequently obtained during custodial interrogation. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). In order to use such inculpatory statements, the prosecution must show that the statements meet the Fifth Amendment voluntariness standard, as well as the Fourth Amendment reasonable search and seizure standard. Id. 99 S.Ct. at 2258–59. Assuming, arguendo, that Blanchard's statements were voluntary, the prosecution has failed to demonstrate that the search and seizure were reasonable. Indeed, until his release on October 31st, Blanchard's inculpatory statements resulted directly from a Fourth Amendment violation. Accordingly, the incriminating statements made by Blanchard immediately following the arrest and during any ensuing custodial interrogation cannot be used against him; *Miranda* warnings alone cannot purge the taint of the illegal search.

Also, the Court finds no significant intervening act to break the causal connection between the illegal search and the confessions by Mr. Blanchard following the search.

In conclusion, this Court specifically finds that Blanchard's act of reaching beneath the mattress and exposing the gun case was not a sufficiently independent, intervening act of free will to purge the taint of the unlawful search. The evidence and confessions obtained as a direct result of the agents' warrantless search must be excluded from trial. Further, since the defendant did not raise the issue of admissibility of post release statements, the issue will not be decided here. Therefore, it is

ORDERED and ADJUDGED that the Motion of the Defendant, Joseph P. Blanchard, to Suppress is hereby granted.