UNITED STATES of America,
Plaintiff-Appellee,

v.

Jerry Don WILSON,
Defendant-Appellant.

No. 77–5203.

United States Court of Appeals,
Fifth Circuit.

March 13, 1978.

Rehearing Denied May 1, 1978.

Jim J. Hatcher, Gainesville, Tex., M. P. Duncan, Decatur, Tex., for defendant-appellant.

Roby Hadden, U. S. Atty., T. J. Baynham, Jr., John H. Hannah, Jr., Asst. U. S. Attys., Tyler, Tex., for plaintiff-appellee.

Before COLEMAN and FAY, Circuit Judges, and KING,* District Judge.

COLEMAN, Circuit Judge.

The Grand Jury for the Eastern District of Texas charged that Jerry Don Wilson, a person previously convicted of a felony, did knowingly and unlawfully *receive* an 8mm Mauser bolt action rifle which had been transported in interstate and foreign commerce, a violation of Sections 922(h) and 924(a), Title 18, United States Code.[1]

---

* District Judge of the Southern District of Florida, sitting by designation.

1. 18 U.S.C., § 922(h) (1977) provides:

(h) It shall be unlawful for any person—

(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

\* \* \* \* \* \*

A plea to the jurisdiction was overruled. Motions to suppress the rifle as evidence and to suppress a post arrest confession were also denied. The defendant then stood trial to the Bench and was found guilty as charged. He appeals, raising here the same issues that were unsuccessfully presented below.

In 1973 the Gainesville, Texas, police department informed the Bureau of Alcohol, Tobacco and Firearms, a division of the United States Treasury Department (ATF), that Jerry Don Wilson had firearms in his possession. Wilson's FBI records revealed that he had been convicted of statutory rape and of burglary. Nothing of any significance resulted from this 1973 report. It was not until 1976 that the ATF, in a one night effort, took up the trail.

On August 18, 1976, ATF agent Griffin received information that Wilson was carrying a firearm while at work as a security guard in the Sherwood Shores area of Texas. About a week later, August 26, the same informant told Griffin that he had seen Wilson with a weapon in his possession. The reliability of the informant does not appear of record.

In the meantime, Sergeant Bordner, of the Texas Board of Private Investigators and Private Securities Agencies, received a complaint that Wilson had a criminal record and was armed. Again, there is no indication in the record that this informant was known to be reliable.

Bordner contacted the ATF to determine if an investigation of Wilson was pending. After consultation, Griffin and Bordner decided to conduct a joint state-federal investigation of Wilson.

About eleven o'clock, p. m., August 27, Wilson was spotted, sitting in his security car with the door ajar and the dome light on. ATF agent Logan and Texas agent Bordner approached the car on the pretense of asking directions to a residence in the vicinity but with the real purpose of ascertaining if Wilson had any weapons in his possession. Caster, a resident of Sherwood Shores, was sitting in the car with Wilson. Logan testified that he saw what "appeared to be" the butt of a shotgun sticking from under the seat on the defendant's side of the car. However, he made no arrest and testified at the suppression hearing that he took this course because he had no tangible proof as to whether the gun [if it was a gun] belonged to Wilson or to Caster. By radio he reported the incident to his fellow ATF surveilling officers, Griffin and Spies.

Surveillance continued. Logan frankly admitted that the officers were hoping to apprehend Wilson transporting the gun across the nearby Red River bridge into Oklahoma, as he was known to frequent a place at the Oklahoma end of the bridge.

Past midnight, about one o'clock, Logan was listening to transmissions on his CB radio, when a voice was heard shouting that the Sherwood Shores security patrolman had shot away the back end of his car. Upon contact with this individual, however, there was no visible injury to the vehicle.

In any case, the ATF officer said, "We have got to stop this", and all the law men began searching for Wilson. About ten minutes later they found him and Caster. Approaching with a drawn gun, Logan identified himself as a federal officer and frisked Wilson. The car was inspected. No gun was found.

Although Wilson was not formally told that he was under arrest, the District Court found, and we agree, that an arrest was, in fact, accomplished.

The next question is the validity of the arrest.

---

to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C., § 924(a) (1977) provides:

(a) Whoever violates any provision of this chapter or knowingly makes any false statement or representation with respect to the information required by the provisions of this chapter to be kept in the records of a person licensed under this chapter, or in applying for any license or exemption or relief from disability under the provisions of this chapter, shall be fined not more than $5,000, or imprisoned not more than five years, or both, and shall become eligible for parole as the Board of Parole shall determine.

■ The District Court held that the arrest had been made with probable cause. Our survey of the proof indicates that this finding was without adequate evidentiary support. The information received by the various officers prior to the night of the arrest is of no help because it was not shown to have come from a previously reliable source. The report of the car having been shot into must stand in the same class because prior to Wilson's arrest the officers saw that the back end of the car had no visible damage. Finally, when the arresting officer had first seen "what appeared to be" the butt of a shotgun, he was in doubt as to whether "the gun" was in the possession of Wilson or Caster and consequently had made no arrest.

The validity of the arrest depended on what the officer knew of his own knowledge, had personally observed, or had reasonably trustworthy information about at the time of the arrest—not what he might have learned later.[2] We are compelled to hold that at the time the agent drew the gun on Wilson and arrested him, probable cause for the action did not exist.

Soon after the arrest, officers Spies and Griffin arrived at the scene. Spies read Wilson the *Miranda* warnings. In response to Spies' questioning about the possession of a weapon, Wilson denied owning a shotgun but replied that he had an 8mm Mauser rifle in his pickup at his residence. Spies asked if he would take the officers to get it. Wilson agreed to do so.

Spies and Bordner accompanied Wilson to his home. Upon arrival at his residence, Spies cautioned Wilson that he did not have to let the agents have the gun and that it could be used in evidence against him. To which warning Wilson replied that he wanted "to do the right thing". Wilson opened the truck door, and Spies reached for the weapon.

Spies, Bordner, and Wilson returned to the location where Wilson had initially been detained. Spies again gave the *Miranda* warning and "*officially* placed Wilson under arrest". Upon further questioning, Wilson admitted that he had obtained the Mauser in the spring of 1975 in Woodbine, Texas.

Griffin and Spies took Wilson to jail where he was again advised of his rights. Wilson waived his rights and confessed to the possession of a shotgun and the rifle and to having previously been convicted of rape and of burglary.

I

*The Fruits of the Poisonous Tree*

We next consider Wilson's argument that the weapons and confession obtained subsequent to his illegal arrest were inadmissible as fruits of the poisonous tree, *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

We must inquire " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint' ", *Wong Sun v. United States, supra,* 371 U.S. at 488, 83 S.Ct. at 417.

■ Evidence is admissible where the "connection between the arrest" and the means through which the evidence was secured "had 'become so attenuated as to dissipate the taint' ". *Id.* at 491, 83 S.Ct. at 419.

■ Where the taint arising from an invalid arrest has dissipated before a voluntary consent to search or prior to a voluntary confession, the evidence so uncovered is admissible. *United States v. Owen,* 5 Cir. 1974, 492 F.2d 1100, *cert. denied,* 419 U.S. 965, 95 S.Ct. 227, 42 L.Ed.2d 180 (search); *Bretti v. Wainwright,* 5 Cir. 1971, 439 F.2d 1042, *cert. denied,* 404 U.S. 943, 92 S.Ct. 293,

---

**2.** On this point, there is a veritable wealth of authority. *See, e. g., Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *United States v. Savage,* 5 Cir. 1977, 564 F.2d 728;

*United States v. Worthington,* 5 Cir. 1977, 544 F.2d 1275; *United States v. Perez,* 5 Cir. 1976, 526 F.2d 859, *cert. denied,* 429 U.S. 846, 97 S.Ct. 129, 50 L.Ed.2d 118. *See also, Recznik v. City of Lorain,* 393 U.S. 166, 89 S.Ct. 342, 21 L.Ed.2d 317 (1968).

30 L.Ed.2d 257 (search); *Phelper v. Decker,* 5 Cir. 1968, 401 F.2d 232 (search); *Thomas v. United States,* 5 Cir. 1967, 377 F.2d 118, *cert. denied,* 389 U.S. 917, 88 S.Ct. 246, 19 L.Ed.2d 273 (confession); *Rogers v. United States,* 5 Cir. 1964, 330 F.2d 535, *cert. denied,* 379 U.S. 916, 85 S.Ct. 265, 13 L.Ed.2d 186 (confession).

■ The critical question is whether the consent or other action was such an intervening act of free will that it purges the evidence of the taint of the unlawful invasion. Courts must not only examine the voluntariness of the confession but whether the statement or other action was a sufficient act of free will to eliminate the taint of the illegal arrest, *Brown v. Illinois,* 422 U.S. 590, 599, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Moffett v. Wainwright,* 5 Cir., 1975, 512 F.2d 496, 502; *see Thomas v. United States, supra,* 377 F.2d at 120; *Rogers v. United States, supra,* 330 F.2d at 541.

■ There are well established guidelines to aid in determining whether the connection between the illegal arrest and the confession or search has become so attenuated as to dissipate the taint and ensure the admissibility of the evidence. Among the factors to be considered are (1) the temporal proximity of the arrest to the procurement of the evidence; (2) the presence of intervening circumstances between the arrest and the discovery of the evidence, *e. g.,* giving of *Miranda* warnings, guidance of an attorney; (3) circumstances surrounding the arrest, *e. g.,* intensive questioning, continuous interrogation, coercion and other official misconduct; *Brown v. Illinois, supra,* 422 U.S. at 603–04, 95 S.Ct. 2254; *United States v. Owen, supra,* 492 F.2d at 1107; *Phelper v. Decker, supra,* 401 F.2d at 237–238; *see Moffett v. Wainwright, supra,* 512 F.2d at 502–503. Of course, the voluntariness of the consent or confession is a threshold requirement, *Brown v. Illinois, supra,* 422 U.S. at 604, 95 S.Ct. 2254.

The absence or presence of one of these factors is not a *per se* indication of free will sufficient to break the causal connection between the illegality of the arrest and the evidence sought to be suppressed. *E. g., Brown v. Illinois, supra,* (giving of *Miranda* warning does not warrant a *per se* finding of free will sufficient to purge evidence of its stigma).

Nor will one factor automatically bar a finding of sufficient free will. *E. g., United States v. Cox,* 5 Cir. 1972, 459 F.2d 986 (taint of illegal arrest was sufficiently dissipated although evidence was obtained within one hour of arrest).

An extraordinarily clear and complete discussion of the law in this field appears in *Phelper v. Decker,* 5 Cir. 1968, 401 F.2d 232 [Judges Brown, Bell, and Thornberry]. It was there set forth that consent to a search is not to be lightly inferred, but should be shown by clear and convincing evidence. Any consent must be voluntary and uncoerced, either physically or psychologically. If consent is secured through an exploitation of the illegal arrest it is undoubtedly inadmissible. The Court referred to what happened to James Wah Toy in *Wong Sun.* There six or seven officers illegally broke into Toy's laundry, chased him to a back room, and arrested him at gunpoint when he put his hand in a drawer. The Supreme Court held that "it is unreasonable to infer that Toy's response [to the questions by the officers] was sufficiently an act of free will to purge the primary taint of the unlawful invasion", 371 U.S. at 486, 83 S.Ct. at 416. In *Decker* our Court pointed out that the defendant had voluntarily accompanied the officers to the police station to drink coffee, as he had done in the past; his arrest was only technically illegal, not in violation of a constitutional right, such as lack of probable cause; Phelper was advised of his constitutional rights including his right to an attorney; and Phelper was not subjected to any prolonged questioning or coercion of any kind. Since the trial judge and the jury had found that Phelper's consent was voluntary and the product of his own free will, the *Decker* Court held that the defendant's Fourth Amendment rights had not been violated.

■ Wilson was given his *Miranda* warning after the unlawful arrest and before he consented to the search. Prior to the time the search was actually conducted, a federal agent explained to Wilson that he did not

have to allow the search and cautioned Wilson that any evidence discovered could be used against him. Wilson responded that he wanted "to do the right thing". The *Miranda* warning was given again before further questioning and again upon arrival at the police station before Wilson confessed to possession of firearms and to being a previously convicted felon.

The defendant was not subjected to prolonged, intense interrogation. No coercion or duress beyond that inherent in any arrest was applied.

Wilson raises points which weigh in his favor. First, the search and confession occurred no later than one hour after his arrest. Next, he was approached after midnight, without warning, by a federal officer, confronting him with a drawn pistol. He knew that he was a convicted felon and his spontaneous reaction must have been that he was in no position to cope with that abrupt development.

On the other hand, the evidence indicates that Wilson thoroughly understood his constitutional rights because he did decline to talk to the officers about the alleged shooting of the automobile, reported on the citizens band radio.

The District Court found that the defendant's statement that he possessed the Mauser was made freely and voluntarily and not the result of coercion or fraud; that his agreement to take the agents to his truck and his consent to the removal of the rifle from the truck were likewise freely and voluntarily given; and that the signed statement given at the Grayson County jail before agents Griffin and Spies at approximately 2:05 a. m. [about an hour after the arrest] on August 28, 1976, was made freely and voluntarily.

The appellate difficulty with these findings is that they rest upon the premise that Wilson had been lawfully arrested. The Court did not consider or decide the question of whether the connection between the illegal arrest and the search-confession had become so attenuated as to dissipate the *Wong Sun* taint. This was the standard by which the admissibility of the evidence should have been weighed and decided.

The question of whether a clear act of free will has intervened must be answered on the facts of the individual case. *Brown v. Illinois, supra*, 422 U.S. at 603, 95 S.Ct. 2254. The District Court made no findings on this issue. We are not a fact finding court; the facts must be found by the trial court, applying correct standards.

To this end, we vacate the judgment and remand the case for complete findings and conclusions, with judgment accordingly.

We do not comprehend that this will raise any double jeopardy problems. In a stipulation filed in the District Court, signed by the defendant and his counsel, about which the defendant was orally interrogated in open court, Wilson admitted the receipt of the weapon. His defense was that the evidence of the receipt as obtained by the search and the confession was inadmissible. If the District Court finds that the *Wong Sun* taint had not been dissipated, it will suppress the evidence and discharge the defendant. If it finds that the taint had in fact been dissipated, the original sentence will be reinstated.

## II

### *Jurisdiction*

The 8mm Mauser was manufactured in 1917 in a German World War I munitions factory in Spandau, Germany. Wilson obtained the gun in Woodbine, Texas in April, 1975. The government stipulated that it could not prove how the gun got from Germany to Woodbine. Wilson argues that this defeated the jurisdiction of the court. Nevertheless, it cannot be disputed that to get from Germany to Texas the gun had to travel in interstate and foreign commerce. Under the statute, § 922(h), this was enough, *Barrett v. United States*, 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976); *United States v. Jones*, 6 Cir. 1976, 533 F.2d 1387, *cert. denied*, 431 U.S. 964, 97 S.Ct. 2919, 53 L.Ed.2d 1059 (1977).

*Conclusion*

The Judgment of the District Court is vacated and the cause remanded to allow further proceedings not inconsistent herewith.

VACATED and REMANDED.