# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 14, 2013

No. 12-40320

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

CARLOS RIOS-DAVILA,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:11-CR-391-1

Before JONES and CLEMENT, Circuit Judges, and KAZEN[*], District Judge.

KAZEN, District Judge:[**]

Defendant Carlos Rios-Davila appeals the district court's denial of his motion to suppress evidence obtained from the search of two different residences. For the reasons given below, we AFFIRM the judgment of the district court.

---

[*] District Judge of the Southern District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-40320

## I.

On the morning of February 24, 2011, Defendant-Appellant Carlos Rios-Davila ("Rios-Davila") and his roommate, Marco Guzman-Velasquez ("Guzman-Velasquez"), drove a Dodge minivan from their apartment to a house on Violet Drive in McAllen, Texas. They parked in the garage and went inside. About thirty minutes later, a team of approximately eleven law enforcement officers, from various state and federal agencies, arrived to conduct a "knock and talk." A joint law enforcement task force had received reports of narcotics trafficking at the Violet Drive residence, and the officers hoped to obtain consent to search the residence.[1] The knock and talk was one of a series of such inquiries planned by the task force in response to the recent murder of a federal agent in Mexico.

Three officers were assigned to secure the perimeter in the back of the house. Instead of positioning themselves outside the property line, however, the officers entered the fenced-in backyard through unlocked gates on the right and left sides of the house. The knock and talk had not yet commenced. Shortly thereafter, Guzman-Velasquez and another co-defendant, Ismael Rivera-Melendez ("Rivera-Melendez"), ran out the back door and were detained by the officers in the backyard. Through the open door, an officer testified that he saw Rios-Davila standing and looking to his left and right, as if trying to decide which direction to run. The officers ordered Rios-Davila out of the residence at gunpoint and detained him as well. The three detainees were asked for identification, and they admitted that they were Mexican nationals who had crossed into the United States illegally. An older woman with a baby appeared

---

[1] Coincidentally and unbeknownst to the joint task force beforehand, a separate law enforcement operation targeting the Violet Drive residence was occurring simultaneously. Based on its own intelligence, the Texas Department of Public Safety ("DPS") was surveilling the property. The joint task force officers became aware of the DPS surveillance only after arriving at the Violet Drive residence.

2

No. 12-40320

at the back door claiming not to know the detained individuals. This raised "red flags" for the officers, and two of them, without obtaining consent, entered through the back door and began to sweep the house for other "bodies."

Around the same time, three different officers initiated the knock and talk at the front of the house. Deanne Fuentes, the wife of co-defendant Ferdinando Guillen-Rivera ("Guillen-Rivera") and lessee of the property, answered the front door. As she spoke to the officers, she claims to have noticed the officers who had entered from the back of the house. Also living at the house was Fuentes' mother. During the knock and talk, she appeared next to Fuentes at the front door, having already encountered the officers entering through the back of the house. The officers conducting the knock and talk asked Fuentes' mother for permission to search the house, and she consented. The search turned up three assault rifles behind a china cabinet and a pistol in a bedroom.

Meanwhile, in the backyard, Rios-Davila, now handcuffed and advised of his rights, told the officers that he and Guzman-Velasquez had brought the assault rifles to the house that morning as part of a larger scheme to traffic firearms into Mexico. Their role was to disassemble the weapons, conceal the parts in panels of the minivan and transport them to a new location. Someone else would then cross the weapons into Mexico. After talking with the officers, Rios-Davila offered to take them to his apartment, where he was keeping two additional firearms. At the apartment, Rios-Davila consented to a search of the premises, and the officers found the two firearms, as well as a camera with pictures of Guzman-Velasquez holding them.

Rios-Davila was indicted, along with Guzman-Velasquez, Guillen-Rivera and Rivera-Melendez, with being an unlawful alien in possession of five firearms, in violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2). Each defendant moved to suppress "all the evidence," arguing that it was obtained in violation of the Fourth Amendment. After holding a suppression hearing, the district

3

No. 12-40320

court concluded that the officers did not have probable cause to enter the backyard and search the Violet Drive residence. Because Guillen-Rivera and Rivera-Melendez lived at the Violet Drive residence, the court granted those defendants' suppression motions. However, because Rios-Davila was merely a visitor at the Violet Drive residence and thus lacked "standing" to object to the search, the district court denied Rios-Davila's motion at a follow-up hearing. The court also ruled that Rios-Davila's consent authorized the subsequent search of his apartment.[2] Rios-Davila then entered a conditional guilty plea that preserved his right to appeal the denial of his motion to suppress. He was sentenced to sixty-three months in prison and three years of supervised release. He timely appealed his conviction, challenging only the district court's denial of his motion to suppress.

## II.

When reviewing the denial of a motion to suppress, we review the district court's legal conclusions *de novo* and its factual findings for clear error. *United States v. Gibbs*, 421 F.3d 352, 356-57 (5th Cir. 2005). "Factual findings are clearly erroneous only if a review of the record leaves [us] . . . with a definite and firm conviction that a mistake has been committed." *United States v. Hearn*, 563 F.3d 95, 101 (5th Cir. 2009) (internal quotation marks omitted). The evidence is considered "in the light most favorable to the prevailing party." *United States v. Troop*, 514 F.3d 405, 409 (5th Cir. 2008). The district court's ruling should be upheld "if there is any reasonable view of the evidence to support it." *United States v. Gonzalez*, 190 F.3d 668, 671 (5th Cir. 1999) (internal quotation marks omitted). Furthermore, we may affirm a ruling on a motion to suppress "on any

---

[2] The district court denied Guzman-Velasquez' motion to suppress for similar reasons. We affirmed the district court's ruling in *United States v. Guzman-Velasquez*, No. 12-40321, 2013 WL 698716, at *2 (5th Cir. Feb. 26, 2013) (unpublished).

No. 12-40320

basis established by the record." *United States v. Mata*, 517 F.3d 279, 284 (5th Cir. 2008).

## III.

### A.     Search of the Violet Drive residence

Rios-Davila first argues that the district court erred when it ruled that he lacked standing under the Fourth Amendment to challenge the search of the Violet Drive residence. To claim the protection of the Fourth Amendment, each defendant must individually demonstrate "a legitimate expectation of privacy" in the premises that were searched. *Minnesota v. Carter*, 119 S.Ct. 469, 472 (1998); *United States v. Vega*, 221 F.3d 789, 797-98 (5th Cir. 2000), *abrogated on other grounds, as recognized in United States v. Aguirre*, 664 F.3d 606, 611 n.13 (5th Cir. 2011). To be legitimate, the expectation of privacy must be based "on a visit which represents a longstanding social custom that serves functions recognized as valuable by society." *Vega,* 221 F.3d at 798 (internal quotation marks omitted). For example, an overnight guest may claim the protection of the Fourth Amendment, but a visitor "merely legitimately on the premises" cannot. *Carter*, 119 S.Ct. at 474 (internal quotation marks omitted). In *Carter*, the Supreme Court concluded that two defendants who were invited into the home of another for the purpose of bagging cocaine had no legitimate expectation of privacy in light of "the purely commercial nature of the transaction engaged in [in the apartment], the relatively short period of time on the premises, and the lack of any previous connection between [the defendants] and the householder." *Id.*

Rios-Davila asserts that he was a guest with a legitimate expectation of privacy because the lessee of the Violet Drive residence invited him onto the premises. As emphasized in *Carter*, however, Rios-Davila's status as an invited

visitor is insufficient to confer standing to challenge a police search. *See also United States v. Majors*, 328 F.3d 791, 795 (5th Cir. 2003) (concluding that the defendant lacked standing to challenge the search of a house since he was "merely a visitor."). Although Rios-Davila may have visited the Violet Drive residence previously,[3] he was never an overnight guest. Further, it is undisputed that Rios-Davila was at the Violet residence to smuggle firearms across the border, a purely commercial purpose. Because Rios-Davila held no legitimate expectation of privacy in the Violet Drive residence, we agree with the district court that Rios-Davila lacked standing under the Fourth Amendment to challenge the search that found three of the firearms listed in the indictment.[4]

### B.    Search of Rios-Davila's apartment

Rios-Davila also contends that his consent to search his apartment, the source of two of the firearms in the indictment, was tainted by his unlawful detention in the backyard of the Violet Drive residence. This contention first requires us to determine whether his detention was, in fact, unlawful.

To comport with the Fourth Amendment, an investigative detention must be supported by reasonable suspicion of criminal activity. *See Terry v. Ohio*, 88 S.Ct. 1868, 1883-84 (1968). Reasonable suspicion is measured in light of the totality of the circumstances, as supported by particular, objective facts. *See United States v. Arvizu*, 122 S.Ct. 744, 750 (2002). A court examines "whether the officer's action was justified at its inception" and "whether the officer's subsequent actions were reasonably related in scope to the circumstances that

---

[3] There was testimony at the suppression hearing that Rios-Davila had visited the Violet Drive residence once about two weeks before this incident.

[4] As alluded to earlier, we reached the same conclusion in a recent unpublished opinion with regard to Rios-Davila's roommate and co-defendant, Guzman-Velasquez. 2013 WL 698716, at *1 ("[T]he evidence adduced at the suppression hearing showed that [Guzman-Velasquez] was a mere visitor and thus not entitled to Fourth Amendment protection.").

No. 12-40320

justified the [detention.]" *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc) (citing *Terry*, 88 S.Ct. at 1879).

Rios-Davila relies primarily on a variation of the "fruit of the poisonous tree" argument: that the officers' allegedly illegal entry onto the Violet Drive premises tainted his subsequent detention and the consent thereby obtained. *See, e.g., United States v. Wilson*, 569 F.2d 392, 395 (5th Cir. 1978). Yet, as we determined above, there was no Fourth Amendment violation as to Rios-Davila. Without a poisonous tree, there can be no tainted fruit. To continue the metaphor, we will not grant Rios-Davila a "second bite at the apple" by allowing him to reargue the legality of the officers' entry onto the premises.

Thus, the relevant question here is whether reasonable suspicion existed at the time the officers detained Rios-Davila, regardless of how the officers entered the backyard. Rios-Davila emphasizes what he was *not* doing immediately before his detention: threatening the officers, brandishing a weapon, or otherwise visibly committing a crime. However, this version of events ignores key facts leading to his detention: (1) the officers were informed of possible narcotics trafficking at the Violet Drive residence; (2) two men suddenly ran out the back door leaving it ajar; and (3) Rios-Davila's behavior indicated that he too was about to flee the house. Based on these circumstances, the officers could have reasonably suspected that criminal activity was, or had been, going on inside the house, thus warranting a brief investigative detention.[5]

Because his detention was justified on the basis of reasonable suspicion, Rios-Davila's subsequent consent to search his apartment is free of any illegal

---

[5] Moreover, Rios-Davila's *continued* detention was justified once he admitted, soon after his identification, that he had entered into the United States illegally. *See United States v. Santana-Garcia*, 264 F.3d 1188, 1193 (10th Cir. 2001); *see also Immigration and Naturalization Serv. v. Lopez-Mendoza*, 104 S.Ct. 3479, 3483 (1984) ("[E]ntering or remaining unlawfully in this country is itself a crime.").

No. 12-40320

taint. Accordingly, we conclude that the district court correctly declined to suppress the two guns found there.

## IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.