CARL E. STEWART, Chief Judge:
In May 2012, officers stopped Robert Allen Montgomery in the driveway of his home for traffic violations. A subsequent weapons frisk revealed cocaine. Montgomery was arrested, his car searched, and his Blackberry smartphone confiscated. The Blackberry contained images of minors engaged in sexual activities, and Montgomery was subsequently indicted and convicted of possessing and receiving child pornography. In this appeal, he challenges on both factual and legal grounds the denial of his motion to suppress the evidence of pornography found on his phone. We AFFIRM.
I.
On May 3, 2012, at approximately 12:55 a.m., three Laredo Police Department officers were standing and talking on the street outside of Montgomery’s mobile *271 home on Olive Street.[1] They had just finished issuing a ticket to two individuals for theft of some alcohol from a nearby store. Officer David Casarez, a nine-year veteran of the Laredo police, then witnessed a vehicle leave the home, known to Casarez as a “drug house,” and return approximately five minutes later. Casarez had arrested six or seven people in front of the home in the preceding few months.[2] He also had intelligence from one of the prior arrestees that the resident drug dealer resupplied at a mechanic shop a few blocks away on Springfield Avenue, and that those resupply trips took about five minutes.
When the vehicle returned, the driver had his high beam lights on and failed to signal to turn into his driveway. Casarez approached the vehicle, and the driver, Montgomery, exited (though it is unclear whether he did so at Casarez’s request). Montgomery gave Casarez a false name (though he later revealed his real name). Casarez then attempted to frisk him. Montgomery became “combative,” resisted the frisk by pushing Casarez’s hands away from his right front pocket repeatedly, and was eventually restrained by another officer. Casarez felt a small bulge in Montgomery’s front pocket during the frisk. He later testified that he did not believe the object was a gun or a knife, and that “[i]t could have been anything, a receipt, a bubble — maybe a gum wrapper.” After Casarez felt the bulge, he asked Montgomery what it was. Montgomery stated that it was a “dime” of cocaine. Casarez removed the cocaine, read Montgomery his Miranda■ rights, handcuffed him, and placed him under arrest.[3]
Approximately 30 minutes after the stop, police obtained Montgomery’s written consent to search his house. The search of the home involved three or four officers, took 20 to 25 minutes, and revealed no drugs or contraband with the exception of a smoking pipe and a spoon with white powdery residue. During that time, Montgomery, who was allowed inside the home to use medicine for a respiratory condition (but remained handcuffed), repeatedly asked for his cell phone so he could erase “naked pictures” that he did not want his father to see. Eventually, another officer — Officer Eduardo Juarez-^ brought Casarez the cell phone from Montgomery’s car. Montgomery agreed to assist Casarez in navigating the phone to erase the pictures in exchange for providing Casarez with his supplier’s phone number. Montgomery directed Casarez to press a button on the phone. As soon as Casarez pressed that button, however, an image that Casarez believed to be an underage nude female appeared. Casarez looked through a few more photos and then ceased to inspect the phone. Montgomery then alleged the phone belonged to his drug dealer, but later admitted it was his, acknowledged he had downloaded the pictures from the Internet, and asked if they could be erased.
Casarez read Montgomery his Miranda warnings again, placed him in the patrol unit, and drove him to the station. When Casarez ran Montgomery’s name, he discovered Montgomery had an outstanding parole warrant for robbery. Montgomery *272 was indicted for knowingly receiving and possessing child pornography. See 18 U.S.C. § 2252A(a)(2), (a)(4)(B). The district court denied his subsequent motion to suppress, and he was convicted after a short bench trial. The presentence report attributed 180 images of child pornography to Montgomery. He was sentenced to a below-guidelines 96 months in prison and 15 years of supervised release.
Montgomery brings two challenges to the district court’s decision. First, he claims, there was not enough particularized evidence that he was armed and 'dangerous to justify the frisk.[4] Second, he argues that even if the frisk were justified at the outset, Officer Casarez exceeded the permissible scope of the frisk by continuing the patdown after determining that Montgomery did not have a weapon.
The Government contends that there was no constitutional violation, but argues that even if one occurred, the cell phone search was the product of an independent act of free will on Montgomery’s part— that is, the consent Montgomery gave was sufficiently attenuated from any alleged constitutional violation to purge the taint of that violation.
II.
This court uses “a two-tiered standard of review for appeals from the denial of a motion to suppress: Factual findings are accepted unless clearly erroneous, and the district court’s ultimate conclusion as to the constitutionality of law enforcement action is reviewed de novo.” United States v. Jackson, 390 F.3d 393, 396 (5th Cir.2004), judgment vacated on other grounds, 544 U.S. 917, 125 S.Ct. 1683, 161 L.Ed.2d 473 (2005). All evidence is viewed in the light most favorable to the prevailing party, here the Government. See United States v. Rounds, 749 F.3d 326, 337-38 (5th Cir.2014).
III.
At the outset, we note that it is not necessary to our decision today to determine if Officer Casarez violated Montgomery’s rights either by frisking him without the requisite suspicion that he was armed and dangerous or by exceeding the permissible scope of the frisk.[5] Based on our review of the record, we hold that the pornography on the cell phone was obtained by Montgomery’s consent, which was the product of an intervening independent act of free will on Montgomery’s part that purged the taint of any alleged constitutional violation. See Wong Sun v. United States, 371 U.S. 471, 486-88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). For purposes of evaluating whether Montgomery’s consent was valid, we will assume arguendo a Fourth Amendment violation.
“Consent to search may, but does not necessarily, dissipate the taint of a fourth amendment- violation.” United *273 States v. Chavez-Villarreal, 3 F.3d 124, 127 (5th Cir.1993) (citation omitted). Consent is valid if it was: 1) voluntary and 2) an “independent act of free will.” United States v. Jenson, 462 F.3d 399, 406 (5th Cir.2006). Montgomery does not challenge the district court’s determination that the consent was voluntary. Instead, he focuses on whether the consent was an independent act of free will, a subject on which the district court did not make any findings because it did not find a Fourth Amendment violation. To determine if consent was independent, this court looks to factors articulated by the Supreme Court in Brown v. Illinois, 422 U.S. 590, 603-04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Those factors are: “1) the temporal proximity of the illegal conduct and the consent; 2) the presence of intervening circumstances; and 3) the purpose and flagrancy of the initial misconduct.” United States v. Jones, 234 F.3d 234, 243 (5th Cir.2000). “The absence or presence of one of these factors is not a per se indication of free will sufficient to break the causal connection between the illegality ... and the evidence sought to be suppressed.” United States v. Wilson, 569 F.2d 392, 396 (5th Cir.1978).
Montgomery argues that there was “no break in the chain of events, nor any evidence that [his] purported consent to search his cell phone and post-arrest statements were independent acts of free will sufficient to purge the taint of the Fourth Amendment violation.” He emphasizes that: 1) the gap between the stop and the consent was only 40 minutes; 2) the Miranda warnings and his raising the issue of the cell phone are not intervening events of significance; and 3) the violation was flagrant because the officers “acted deliberately in initiating and carrying out the illegal patdown.”
The Government disagrees with Montgomery’s version of the timing of the consent, and represented at oral argument that the consent was given between 50 and 55 minutes after the stop. The Government points to multiple intervening circumstances — including Miranda warnings and Montgomery’s decision to broach the issue of searching the cell phone — and also argues that the police misconduct was not flagrant because, at worst, it consisted of a “single ‘pinch’ of an item felt in a pocket during a justified Terry weapons pat down.”
A.
As to the first factor, there is no strict time between illegal conduct and consent that would serve to either validate or invalidate the consent. Compare, e.g., United States v. Hernandez, 670 F.3d 616, 623 (5th Cir.2012) (finding consent invalid where “no indication that more than a few hours passed between the Fourth Amendment violation and the [incriminating] statements”), and United States v. Gomez-Moreno, 479 F.3d 350, 352-54, 358 (5th Cir.2007) (holding consent tainted when obtained 45 minutes after unconstitutional raid), overruled on other grounds by Kentucky v. King, — U.S. -, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011), with Rawlings v. Kentucky, 448 U.S. 98, 107, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) (finding confession admissible when obtained 45 minutes after improper arrest).[6] There is, however, substantial authority for the proposition that consent given within a few seconds or minutes of the *274 violation generally favors the defendant. See Wayne R. LaFave, Search & Seizure § 8.2(d) n. 140 (4th ed.2004) (collecting cases). A few hours between the events, though, often favors the government. See United States v. Sheppard, 901 F.2d 1230, 1239 (5th Cir.1990) (King, J., dissenting) (“The attenuation exception, however, requires greater temporal distance than seconds or minutes. Supreme Court decisions ... have generally found that hours must elapse before evidence is purged of its taint.”).
Assuming a Fourth Amendment violation — but granting the Government the assumption of a 55-minute gap, which is plausible in light of the record — we conclude that this factor favors Montgomery. Although the law is unsettled in this area, Hernandez and Gomez-Moreno each show that approximately one hour between an illegal search and consent favors the defendant. See Hernandez, 670 F.3d at 623; Gomez-Moreno, 479 F.3d at 352-54, 358.
Indeed, Rawlings, the only case cited by the Government on this issue, provides support for the view that the temporal proximity here favors Montgomery. In Rawlings, police detained three individuals, including the petitioner, in a home while waiting for a search warrant to issue. See 448 U.S. at 100-01, 107, 100 S.Ct. 2556. The detention lasted approximately 45 minutes. Id. at 100-01, 100 S.Ct. 2556. During that period, the detainees “sat quietly in the living room, or at least initially, moved freely about the first floor of the house,” and one “just went on in and got a cup of coffee and sat down and started waiting for the officers to return.” Id. at 107-08, 100 S.Ct. 2556 (internal quotation marks omitted). After they returned with the warrant, police searched a bag that contained drugs, and the petitioner immediately confessed ownership of the contraband. Id. at 100-01, 100 S.Ct. 2556. The Court, though it found the confession admissible, did not rely on the 45-minute interval to support its holding. See id. at 107-08, 100 S.Ct. 2556. The Court noted that while “under the strictest of custodial conditions such a short lapse of time might not suffice to purge the initial taint,” the degree of freedom afforded the detainees “outweigh[ed] the relatively short period of time that elapsed between the initiation of the detention and petitioner’s admissions.” Id. (emphasis added).
By contrast, here, Montgomery was clearly under arrest, handcuffed, and permitted none of the freedoms of the Rawlings detainees that the Court explained counterbalanced the “relatively short period” of 45 minutes between the initiation of the detention and the confession. See 448 U.S. at 108, 100 S.Ct. 2556. This factor therefore favors Montgomery. The 10 additional minutes separating the two critical events in this case from those in Rawlings cannot be said to alter this conclusion. Of course, however, temporal proximity is not dispositive. See United States v. Kelley, 981 F.2d 1464, 1471 (5th Cir.1993) (“It is true, as Kelley correctly asserts, that no significant period of time elapsed between the allegedly illegal detention and Andrews’s consent. That factor alone, however, is not dispositive.”). We therefore proceed to address the remaining factors.
B.
The second factor — which requires an evaluation of intervening circumstances— favors the Government. Most fatal to Montgomery’s argument on this point is that the consent he gave to search his cell phone was unsolicited. “[E]ven less is required to show that the consent is voluntary and untainted” when the consent is unsolicited. LaFave, Search & Seizure § 8.2(d); see also id. (“In determining whether the consent was, as the Court put *275 it in Brown, ‘obtained by exploitation of an illegal arrest,’ account must be taken of ... whether the consent was volunteered rather than requested by the detaining officers.... ” (quoting Brown, 422 U.S. at 603, 95 S.Ct. 2254)); United States v. Canseco, 465 F.2d 383, 385 (5th Cir.1972) (holding evidence found in appellant’s house admissible where defendant “not only invited the agents to search his premises but later insisted on a second search,” and where “the searches were initiated as a result of appellant’s unsolicited invitation”); United States v. Mendoza-Salgado, 964 F.2d 993, 1012 (10th Cir.1992) (“While her unsolicited consent does not end the inquiry, it weighs heavily into our conclusion that agents did not coerce Mrs. Garcia into signing the consent form.”); Hubbard v. Tinsley, 350 F.2d 397, 398 (10th Cir.1965) (finding unsolicited consent where habeas petitioner, initially under investigation for murder, told officers they could use a key found in his possession to open a bus station locker that led to evidence supporting his subsequent burglary prosecution).
Montgomery repeatedly requested that the officers access his cell phone; he stated he wanted the officers to remove the photos so that he could conceal them from his father. There is no indication in the record that the officers requested to search the cell phone, or were independently interested in its contents. That unique intervening circumstance separates this particular act of consent from the doubtless more frequent occurrence: consent provided after an officer’s request to conduct a search.
Additionally, while the following facts are not controlling (as Montgomery rightly points out), they further support a holding that the consent was sufficiently detached from the arrest to purge any taint. First, officers at least once read Montgomery his Miranda rights before searching the cell phone. See United States v. Basey, 816 F.2d 980, 995 (5th Cir.1987) (“Although we have written that the fact that a defendant was given Miranda warnings, standing alone, will not prove that the statement was sufficiently an act of free will, we also observe that the curative power of Miranda warnings may be given great weight in some situations.” (internal quotation marks, citation, and brackets omitted)). Second, he had a criminal history, and at one point served over two years in prison for participating in an armed robbery. See id. at 996 (taking into account criminal history in intervening circumstances inquiry). Finally, he was removed from the police car and allowed into the home, where he was calmly using medicine for his respiratory condition in the house before he offered the consent.
Montgomery relies on Chavez-Villarreal, but that case involved a man giving consent to search his car after the officer had requested consent and made his suspicions that it contained narcotics known. 3 F.3d at 128. By contrast, here, Montgomery broached the phone search himself, and he does not contend here (though he did in the district court) that the officers had any expectation of recovering pornography on the phone from the search.
C.
Finally, looking to the third factor, we conclude that the police misconduct here— again, assuming it was misconduct — was not flagrant. The alleged misconduct here was in frisking Montgomery without a reasonable belief that he was armed and dangerous, or in exceeding the permissible scope of the frisk. These alleged violations do not rise to the level of flagrancy found by the Supreme Court and this court requiring suppression of the evidence.
*276 For example, in Brown, Chicago police officers, lacking probable cause to search or make an arrest but suspicious that the defendant was involved in an unsolved murder, broke into the defendant’s house, searched it, and then — after pointing a gun at him as he returned home — arrested him. 422 U.S. at 592, 95 S.Ct. 2254. The Court found this violation flagrant and suppressed the defendant’s subsequent inculpatory statements. Id. at 604-05, 95 S.Ct. 2254. In Gomez-Moreno, a large group of officers investigating a tip that the defendant was harboring illegal aliens drew their weapons and entered her house without a warrant. 479 F.3d at 352-53. After finding illegal aliens and the defendant inside, one officer sought the defendant’s consent to search another house on her property, telling her, “We’re going to get in that door one way or another.” Id. at 353 (internal quotation marks omitted). This court found that raid a flagrant constitutional violation, and reversed the denial of a motion to suppress. Id. at 358.
By contrast, in Jenson, a suspicious police officer prolonged a valid traffic stop after the passengers’ drivers’ licenses were cleared and reasonable suspicion dissipated. 462 F.3d at 402-03, 406 n. 7. Four minutes after that, the officer requested consent to search the vehicle, which the defendant — -the car’s driver — gave. Id. at 403, 406 n. 7. Before searching the vehicle, the officer, to protect himself while he was in the vehicle, conducted a frisk of the defendant that revealed weapons; he then arrested the defendant. Id. at 403. Although this court suppressed drug and firearm evidence obtained after the illegal frisk, id. at 408, we did so despite finding that “the initial officer misconduct was not flagrant.” Id. at 407.
The alleged misconduct here closely resembles the misconduct in Jenson. In this case, at worst, a concededly valid traffic stop led to an unconstitutional weapons frisk conducted without reasonable suspicion. That frisk is analogous to the illegal one conducted without reasonable suspicion on the Jenson defendant and found to fall short of the flagrancy threshold. 462 F.3d at 403, 407. These facts do not rise to the requisite level of flagrancy to tip this factor in Montgomery’s favor. See, e.g., Brown, 422 U.S. at 592, 604, 95 S.Ct. 2254; Gomez-Moreno, 479 F.3d at 352-53, 358.
D.
The Brown factors collectively favor the Government here. While little time passed between the alleged violation and Montgomery’s consent, his unsolicited consent coupled with the nature of the alleged misconduct lead us to conclude that the consent was valid as a voluntary, independent act of free will. Therefore, the evidence need not be suppressed as fruit of the poisonous tree.
We note that the exclusionary rule’s “prime purpose” — to “deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures,” Illinois v. Krull, 480 U.S. 340, 347, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987) (internal quotation marks and citation omitted)' — would not be served by suppressing the pornography obtained on Montgomery’s cell phone. The police were not in search of child pornography here. As the Ninth Circuit stated under somewhat similar circumstances in United States v. Jones:
[W]hen officers through serendipity discover evidence concerning a suspect whom they are unlawfully investigating in connection with another, different crime, the new evidence is not tainted where the officers discovered it only because their unlawful investigation fortui *277 tously put them in a position to do so and where their unlawful investigative intent did not extend to the additional evidence.
608 F.2d 386, 391 (9th Cir.1979) (internal quotation marks and citation omitted).
IV.
The conviction is therefore AFFIRMED.

. These facts, unless otherwise noted, are provided in the light most favorable to the Government. See United States v. Rounds, 749 F.3d 326, 338 (5th Cir.2014).

. The parties dispute when these arrests were made. Viewing the facts in the light most favorable to the Government, as we must, they were made in the few months preceding the stop at issue in this case.

. One of the officers had a canine, but the dog was never employed at the scene.

. Montgomery does not challenge the validity of the stop. He appears to concede that it was justified by at least one of the traffic violations described above.

. This method is permissible, and adheres to the constitutional avoidance doctrine. See United States v. Kelley, 981 F.2d 1464, 1470 (5th Cir.1993) ("However, it is unnecessary for us to determine whether the questioning that took place here constituted an unreasonable detention, because, even if it did, we hold, consistent with all other authorities, that Andrews’s valid voluntary consent to the search cured any Fourth Amendment violation that may have occurred.”); United States v. Grajeda, 497 F.3d 879, 882 (8th Cir.2007) (assuming a Fourth Amendment violation in an initial search, but holding subsequent search validáted by intervening voluntary consent). See generally Thomas Healy, The Rise of Unnecessary Constitutional Rulings, 83 N.C. L.Rev. 847 (2005).

. Though the Brown factors originate in a confession case, 422 U.S. at 603-04, 95 S.Ct. 2254, they are used by courts to evaluate the independence of both confessions and evidence obtained via consent. See, e.g., Wilson, 569 F.2d at 396-97 (applying Brown factors where evidence obtained by means of consent to search rather than a confession).