Filed 6/28/16  P. v. Cabrera CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C080055 |
| v. | (Super. Ct. No. 13F00954) |
| GUADALUPE CABRERA, | |
| Defendant and Appellant. | |

After the trial court denied her motion to suppress evidence, defendant Guadalupe Cabrera pleaded no contest to accessory to murder and arson of an inhabited structure while using an accelerant.  (Pen. Code, §§ 32, 451, subd. (b), & 451.1, subd. (a)(5).) The trial court sentenced her to eight years in prison.

Defendant now contends the trial court erred in failing to suppress her inculpatory statements because there were no intervening events to dissipate the taint of her unlawful detention.  We agree defendant was initially unlawfully detained, but the record shows

1

the subsequent circumstances -- including defendant agreeing to talk with detectives at the police station if she could first deliver a pickup truck to a relative and drive her daughter to school -- were too attenuated to support suppression of the statements she later provided to the detectives. The trial court did not err in denying defendant's motion to suppress.

We will affirm the judgment.

BACKGROUND

The following factual summary is derived from the factual basis for defendant's plea and the suppression hearing. On February 1, 2013, defendant drove David Acuna to a gas station where they obtained gasoline. She then drove Acuna to an apartment complex, knowing he intended to set fire to and burn Patrick Kendrick's apartment to cover up evidence that he had killed Kendrick. Defendant also helped Acuna avoid arrest for the murder of Kendrick, staying with him in his apartment and helping him treat burns he received while setting fire to Kendrick's apartment.

On February 5, 2013, the police executed a search warrant at defendant's home. The police found in defendant's bedroom a black plastic garbage bag containing items that smelled like gasoline. They also found bloody clothing, a bloody knife, and items belonging to Kendrick, including his laptop, identity cards, and checkbook. According to defendant's roommate, defendant brought the black plastic bag into the bedroom.

In addition, the police seized defendant's car, a white Honda Civic. The police had previously learned Acuna had been seen jumping into a small white Honda when leaving Kendrick's apartment after setting the fire.

The police interviewed defendant's roommate on February 5, 2013. She told police defendant was at Acuna's apartment treating him for burn wounds to his face and hands. The roommate also said defendant was using Acuna's red pickup truck while she was caring for him. Defendant told the roommate, "[t]he less you know, the better."

2

On February 6, 2013, the police executed a search warrant on Acuna's home after having conducted surveillance on the home. Officers were instructed to stop and identify anyone leaving Acuna's residence. At around 8:00 a.m., Detective Robert Quinn saw a female and a child (later identified as defendant and her daughter) leaving Acuna's residence in a red pickup truck. Detective Quinn followed the truck for one to two minutes and then stopped it about a half-mile to a mile away from Acuna's residence, intending to detain defendant until the arrival of Detective Mark Johnson, who was assisting in the investigation into Kendrick's death. Per his customary practice, Detective Quinn explained the police would be performing a search warrant on the place defendant had just left, namely Acuna's home. Detective Quinn asked defendant her identity and questions related to officer safety, including if there were weapons, how many people were inside, and whether there were dogs, elderly people, or children. The only other discussion topic was "casual conversation about the child;" Detective Quinn never discussed Kendrick's murder. Although he did not tell defendant she was free to leave, he never said defendant was under arrest and never handcuffed her.

Detective Johnson arrived approximately 15 to 20 minutes after Detective Quinn initially detained defendant and her daughter. Detective Johnson again explained to defendant that the police were "in the process of executing a search warrant" at Acuna's home and were investigating an incident they believed involved Acuna. Detective Johnson told defendant he "wanted to talk to her about her contact with [Acuna] from the time period of February 1st up until the time she was stopped," and asked if she would go to police headquarters for the conversation. Defendant agreed, so long as she could drop her daughter off at school and park the pickup truck at another location. Detective Quinn testified defendant drove the pickup truck to a relative's home and the police followed her; Detective Johnson testified, however, that he drove the pickup truck because it was not defendant's truck and it appeared to have "mechanical issues." The officers then

3

escorted defendant and her daughter to the daughter's school and then drove defendant to the police station.

Detective Johnson began interviewing defendant at the police station, telling her she was "just a witness" and was not under arrest. Although defendant was technically free to leave, Detective Johnson did not tell her that. After the two spoke for about an hour and a half, defendant described the black plastic trash bag in her bedroom with the suspicious items. Detective Johnson began to believe defendant was more involved in the crimes against Kendrick than he previously thought. They took a break. About an hour later, Detective Johnson took defendant to a different interview room, resumed questioning, and read defendant her *Miranda* rights.[1] Defendant indicated she understood her rights and was willing to talk with Detective Johnson. The interview continued for another 30 minutes and then the police arrested defendant.

Prior to trial, defendant moved to suppress the statements she made during the two-hour interview with Detective Johnson. On April 16, 2015, the trial court held a hearing and found there was a detention, but any Fourth Amendment concern was cured by defendant's agreement to speak with Detective Johnson. The trial court also concluded there was no Fifth Amendment violation. Based on Detective Johnson's testimony and the transcript of defendant's interview at the police station, the trial court found credible that Detective Johnson treated defendant as a witness rather than as a suspect prior to taking a break and then appropriately read defendant her *Miranda* rights upon resuming the interview. The trial court denied the motion to suppress.

At a subsequent hearing defendant pleaded no contest to accessory to murder and arson of an inhabited structure. (Pen. Code, §§ 32, 451, subd. (b).) She also admitted

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694] (*Miranda*).

using an accelerant. (Pen. Code, § 451.1, subd. (a)(5).) The trial court sentenced her to an aggregate term of eight years in prison.

## DISCUSSION

Defendant contends the trial court erred in denying her motion to suppress evidence. She claims she was unlawfully detained because Detective Quinn had no reasonable suspicion to perform the traffic stop. According to defendant, no intervening events dissipated the taint of the initial unlawful detention, and thus her incriminating statements during the interview with Detective Johnson must be suppressed as fruit of the poisonous tree.

The People disagree, contending Detective Quinn legally detained defendant. In the alternative, the People contend any taint of illegality was attenuated because defendant made her statements to Detective Johnson freely and voluntarily.

### A

We begin with whether defendant was unlawfully detained. Although law enforcement may detain, without reasonable suspicion or probable cause, occupants of premises subject to a valid search warrant while the search is underway, occupants must be in the immediate vicinity of the premises at the commencement of the search. (*Bailey v. United States* (2013) ___ U.S. ___, ___ [185 L.Ed.2d 19, 33-34].) Where, as here, an occupant is detained half a mile or a mile away from the search warrant premises, there must be some other rationale to justify the detention. (*Id.* at p. 34.)

There was no other legal basis for Detective Quinn to detain defendant for up to 20 minutes until Detective Johnson arrived. There were no vehicle code violations and Detective Johnson testified there was no probable cause to arrest defendant. Rather, Detective Quinn said he was told to detain defendant to gather information for the pending search, and Detective Johnson testified he wanted to talk to defendant because she was leaving Acuna's residence and she might know more about Acuna and the incident with Kendrick.

5

We conclude defendant's initial detention was unlawful. But that does not end our analysis.

B

In reviewing a trial court's ruling on a motion to suppress, "[w]e must accept the trial court's resolution of disputed facts and inferences, and its evaluations of credibility, if they are substantially supported. [Citations.] However, we must independently determine from the undisputed facts, and those properly found by the trial court, whether the challenged statement was illegally obtained. [Citation.]" (*People v. Boyer* (1989) 48 Cal.3d 247, 263, disapproved on another ground in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1.)

Suppression of evidence is only required if an illegal search or seizure is (1) a but-for cause of the discovery of the evidence, *and* (2) the causal chain has not become too attenuated or the circumstances have not purged the evidence of the primary taint. (*Hudson v. Michigan* (2006) 547 U.S. 586, 592 [165 L.Ed.2d 56, 65]; *Wong Sun v. United States* (1963) 371 U.S. 471, 488 [9 L.Ed.2d 441, 455]; see also *People v. Boyer* (2006) 38 Cal.4th 412, 448 (*Boyer*).) Here, but-for causation is established; there is no evidence defendant would have made the inculpatory statements that day if the detectives had not initially detained her. But the record also establishes a causal chain that is too attenuated to support suppression.

In considering whether the causal chain has become too attenuated, courts look to three factors: (1) the amount of time between the illegal seizure and the confession, (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the illegal conduct. (*Brown v. Illinois* (1975) 422 U.S. 590, 603-604 [45 L.Ed.2d 416, 427] (*Brown*); see also *Boyer, supra*, 38 Cal.4th at p. 448.) In addition, the statement must be voluntary. (*Brown*, at p. 604.) The government bears the burden of demonstrating admissibility. (*Ibid.*; see also *Boyer, supra*, at p. 449.)

6

As to the first *Brown* factor, "there is no strict time between illegal conduct and consent that would serve to either validate or invalidate the consent." (*U.S. v. Montgomery* (5th Cir. 2015) 777 F.3d 269, 273.) Although Detective Johnson arrived only about 15 to 20 minutes after Detective Quinn detained defendant, the record is unclear how long Detective Johnson spoke with defendant before obtaining her consent for an interview. Nevertheless, defendant was not interviewed until after Detective Quinn and Detective Johnson complied with defendant's request to deliver the truck to a relative and drop off her daughter at school. The record is unclear exactly how much time passed between the initial traffic stop and defendant's incriminating statements, but the record indicates a significant amount of time passed. Accordingly, the first factor does not support suppression. (See *id.* at pp. 273-274 [significant passage of time favors the government].)

Regarding the second *Brown* factor, there were multiple intervening circumstances. Detective Quinn detained defendant until Detective Johnson arrived, but as the trial court found, Detective Johnson treated defendant as a witness. He did not handcuff or restrain her, he did not pull his weapon, and he did not suggest she was under arrest. He asked if defendant would talk with him and defendant agreed to go to the police station to talk. But first, she wanted to deliver the pickup truck to a relative and bring her daughter to school. The detectives agreed to her conditions. Those intervening circumstances do not support suppression.

As for the third *Brown* factor, the conduct of the detectives was not flagrant. Although Detective Quinn did not tell defendant she was free to leave, he never restrained her or told her she was under arrest. The detention was approximately 15 to 20 minutes, and Detective Quinn only asked informational questions about Acuna's residence related to officer safety. Detective Quinn did not ask about the murder and he otherwise only had "casual conversation about [defendant's] child."

7

Based on the *Brown* factors, there is sufficient evidence of attenuation such that defendant's subsequent statements to Detective Johnson were not the fruits of the initial unlawful detention. The trial court did not err in denying defendant's motion to suppress her statements.

DISPOSITION

The judgment is affirmed.

/S/
MAURO, J.

We concur:

/S/
RAYE, P. J.

/S/
BUTZ, J.